The appellant, John Thomas Chandler III, was convicted of first degree sodomy, a violation of § 13A-6-63, Code of Alabama 1975. He was sentenced to 25 years' imprisonment.
The state's evidence tended to show that on September 14, 1987, a nine-year-old girl was molested while selling Girl Scout cookies door-to-door in her neighborhood. When the girl approached the trailer where the appellant lived, he accosted her and asked if he could buy some cookies. The appellant then grabbed her and took her inside the trailer to his bedroom. She testified that he laid her on the bed, removed her panties, and "licked her in her private spot." He also struck her. She kept yelling for help and for the appellant to stop. *Page 1139 
In the meantime, the victim's mother started looking for her after she did not come home on time. A friend found the child's bicycle at the appellant's trailer and told her mother. The victim's mother proceeded to the appellant's trailer where she heard screams from inside. She entered and saw her daughter on the bed with her panties off and her dress up. The appellant's head was only a few inches from her. She lunged at the appellant, they scuffled, and the mother and daughter managed to escape from the appellant. They rode their bicycles to a community center, where they called home and called the police. The victim's father went to the appellant's trailer to prevent the appellant's leaving. When he arrived, the appellant was running out the door. The child walked up to her father and said, "Dad, that's the man!" The appellant was carrying a "long gun" and as the victim's father approached, he got into his truck. The victim's father shouted to appellant that he was going to go to jail. The appellant replied that he would see him in California. He fled, and he was apprehended six months later in Florida. On appeal, appellant raises three issues.
 I
Initially, appellant contends that evidence of his being located in Florida six months after the crime was offered only to show one or more Florida convictions.
The following occurred during the examination of Investigator John Hardy:
 "Q: Did you receive from the Dukes an identification of a particular individual to be looking for?
"A: Yes.
 "Q: Did you receive a name from the Dukes, a particular person to be looking for?
"A: Yes, sir.
"Q: And who was that person?
"A: John T. Chandler.
 "Q: And from this information from the Dukes, did you also receive information about a vehicle?
"A: Yes, sir; I did.
"Q: And what type vehicle was that, please?
 "A: It was described as a '73-'74 green Chevrolet pickup bearing Alabama license plate number or tag number 27AT-332.
 "Q: And did you have the occasion to try to run a tag on that vehicle?
"A: Yes, I did.
"Q: And what did it come back as being?
 "A: It was registered to a J.T. Chandler of Route 2, Box 147, Selma.
 "Q: All right. Now concerning the information that you received, that you're looking for a John T. Chandler, a particular green truck, did you begin looking for him or did the law enforcement —
 "A: Yes, sir. I put out a dispatch to see if they could locate the vehicle and the individual.
"Q: Were you able to locate that vehicle that day?
"A: No, sir.
 "Q: Were you able to locate that vehicle the following day?
"A: Beg your pardon?
 "Q: Were you able to locate that vehicle the following day?
 "A: I understand the vehicle was back at the residence the following day, but the individual was not.
 "Q: All right. Now were you able to locate the vehicle — when, sir — when was the next time you were able to locate John T. Chandler, sir?
"MR. GILMORE: May we approach the bench?
 "(Whereupon the following proceedings were held in the presence of, but out of the hearing of, the jury:)
 "MR. GILMORE: Your Honor, I would like them to explain to me what they're getting to.
"MR. SULLIVAN: It goes to flight.
"THE COURT: Flight.
 "MR. SULLIVAN: It shows that he was found in Florida in March of 1988. That's as far as I'm going with it. If I go any further, I'll go into having him *Page 1140 
arrested down there. I'll not get into that.
"THE COURT: All right.
 "MR. GILMORE: We object. It's prejudicial and no probative value would be had in this matter.
"THE COURT: Overruled.
 "(Whereupon the following proceedings resumed in the presence and hearing of the jury:)
 "Q: John, this happened on September 14, 1987? When was the next time that you had any communications as to the whereabouts of John Chandler, please?
 "A: Early part of March, I believe, around the 4th or 5th of March. Somewhere in there.
"Q: What year, sir?
"A: Of '88. 1988.
 "Q: From September to March of 1988, his whereabouts were not known to you?
"A: That's right.
 "Q: During this period of time, was there a continued search for John Chandler?
"A: Yes.
"Q: And where was John Chandler located?
"A: Pinellas County, Florida."
"In a criminal prosecution the state may prove that the accused engaged in flight to avoid prosecution." C. Gamble,McElroy's Alabama Evidence § 190.01(1) (3d ed. 1977). Evidence of flight "sheds light on the guilt or innocence of one accused of criminal activity." Crittenden v. State, 414 So.2d 476, 480
(Ala.Cr.App. 1982).
Appellant's two specific arguments in relation to this issue are (1) that the evidence was introduced in order to show Florida convictions, and (2) that his apprehension in Florida, six months after the offense, occurred such a long time after the event as to be too remote to be considered.
The record reveals that no mention was made in the presence of the jury of the appellant's Florida convictions. Furthermore, "evidence of flight is admissible even though that evidence involves the commission of other crimes by the accused." Beaver v. State, 455 So.2d 253, 257 (Ala.Cr.App. 1984). The flight in this case was immediate. There was no "remoteness" element involved. The fact that his capture in Florida occurred six months after the offense and the flight does not make the flight itself "remote."
Thus, reference to appellant's arrest in Florida was received as evidence without error.
 II
Appellant next asserts that the trial court erroneously instructed the jury that proof of penetration was not necessary to prove sodomy. Appellant's assertion is based on a misunderstanding of the law.
According to § 13A-6-63, Code of Alabama 1975:
 "(a) A person commits the crime of sodomy in the first degree if:
 "(1) He engages in deviate sexual intercourse with another person by forcible compulsion; or
 "(2) He engages in deviate sexual intercourse with a person who is incapable of consent by reason of being physically helpless or mentally incapacitated; or
 "(3) He, being 16 years old or older, engages in deviate sexual intercourse with a person who is less than 12 years old."
Deviate sexual intercourse is defined as "any act of sexual gratification between persons not married to each other, involving the sex organs of one person and the mouth or anus of another." Section 13A-6-60(2), Code of Alabama 1975. As we stated in Glover v. State, 518 So.2d 247 (Ala.Cr.App. 1987), penetration is not an element of sodomy. Thus, the circuit court committed no error in instructing the jury that proof of penetration is not necessary to prove sodomy.
 III
Appellant further contends that there was insufficient evidence to convict him of sodomy in the first degree. Specifically, *Page 1141 
he states in his brief that all the evidence against him was circumstantial.
The victim testified that the appellant put his mouth on her "private part." This was not circumstantial evidence. Even if all the evidence had been circumstantial, that fact alone would not mean that the evidence was insufficient to submit the case to the jury.
For the foregoing reasons, this case is due to be affirmed.
AFFIRMED.
All the Judges concur.