[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 58 
 ON RETURN TO REMAND
This cause was remanded to the trial court with instructions that the trial court follow the guidelines and evaluate the relevant factors in determining whether the appellant had established a prima facie case of discrimination in the prosecutor's use of his peremptory strikes. Batson v. Kentucky,476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and Ex parteBranch, 526 So.2d 609 (Ala. 1987). Long v. State, 668 So.2d 54
(Ala.Crim.App. 1994). The trial court, having complied with those instructions, has returned an order stating that after considering all of the Ex parte Branch factors that might indicate discrimination, it finds no inference of purposeful race discrimination. Because the standard of review of a trial court's determination of whether a prima facie case of discrimination under Batson and Ex parte Branch was established affords the trial court with "considerable deference," Harrellv. State, 571 So.2d 1270 (Ala. 1990), and in light of the total record, Ex parte McNair, 653 So.2d 353 (Ala. 1994) cert. denied, ___ U.S. ___, 115 S.Ct. 1121, 130 L.Ed.2d 1084 (1995), there was no error in the trial court's determination. SeeVanderslice v. State, [CR-93-1174, January 13, 1995] ___ So.2d ___ (Ala.Cr.App. 1995).
The appellant raised seven other issues in his original brief on appeal. A discussion of those issues follows.
 I
The appellant argues that the trial and subsequent conviction should be declared void because, he says, the trial court was without jurisdiction to try the case. More particularly, he contends that because his motion to withdraw his guilty plea, granted on June 30, 1993, had already been denied by operation of law on June 13, 1993, the trial court lacked jurisdiction to try the case on August 16, 1993. The appellant's sentence had been imposed four months earlier on April 14, 1993.
The record indicates that on July 7, 1993, this court dismissed the appellant's appeal on grounds that the trial court had granted the appellant a new trial. Although the appellant's motion to withdraw his plea was denied by operation of law on June 13, 1993, pursuant to Rule 24.4, A.R.Cr.P., he filed notice of appeal on May 26, 1993. Therefore, pursuant to Rule 24.1(b), A.R.Cr.P., this Court obtained jurisdiction over the case when the motion was denied by operation of law. Because the trial court had granted the appellant the relief which he sought on appeal, his appeal was dismissed and the case was remanded to the trial court. Thus, the trial court had jurisdiction at the time of trial.
 II
The appellant argues that the trial court erred in allowing a medical examiner, Dr. Kenneth Warner, to testify concerning the results of the autopsy performed on the victim. He argues that Dr. Warner's testimony was inadmissible because, he says, the State failed to prove a proper chain of custody as to the victim's body; specifically, he says, the State failed to establish that the body had not been tampered with between the time it was placed in the cooler in the medical examiner's office on June 12, 1992, and the autopsy was performed by Dr. Warner on June 13, 1992. *Page 59 
The pertinent evidence presented by the State is as follows: Murray Mitchell, an employee of the Alabama Department of Forensic Sciences ("DFS"), testified that he received the victim's body from Culivere Terry, the owner of Terry's Metropolitan Mortuary, on June 12, 1992. He testified that the body was kept in the same condition and under his exclusive custody and control until it was placed in the evidence locker at the DFS. He testified that he locked the body in the cooler until the pathologist could examine it.
Dr. Warner testified that he received the victim's body from Murray Mitchell on June 13, 1992. He testified that, from the time he received the body until he performed the autopsy, the body was under his exclusive custody and control. Dr. Warner testified that it was common practice for the contract drivers, such as Murray Mitchell, to place the bodies in a locked cooler overnight. He further testified that he sent Mitchell to pick up the body and, therefore, that he knew the exact time Mitchell was dispatched and when he returned and placed the body in the cooler. This evidence was sufficient to prove to a reasonable probability that the victim's body was in the same condition as, and not substantially different from, its condition at the beginning of the chain. Ex parte Williams,505 So.2d 1254 (Ala. 1987); Howell v. State, 627 So.2d 1134, 1142
(Ala.Cr.App. 1993). Thus, because the State established to a reasonable probability that there had been no tampering with the evidence, Suttle v. State, 565 So.2d 1197, 1199
(Ala.Cr.App. 1990), the trial court properly overruled the appellant's objection.
Additionally, the appellant argues that Dr. Warner was not qualified as an expert and should not have been permitted to testify to the distance between the barrel of the gun and the victim's body. The record reveals that Dr. Warner testified that the injury to the victim was not a "contact wound." He further testified that, based on his experience, his training, the examination of the victim, and his having performed over 500 autopsies on gunshot victims, he was of the opinion that the distance between the weapon and the victim at the time of the shooting was between two and three feet. Because the prosecution laid a proper foundation for the receipt of that testimony by establishing Dr. Warner's credentials, Dr. Warner was qualified to testify as an expert and give a proximate range. C. Gamble, McElroy's Alabama Evidence § 127.01(5)(b) (4th ed. 1991); Williams v. State, 620 So.2d 82
(Ala.Cr.App. 1992).
 III
The appellant argues that Clarence Haynes, a deputy coroner, was erroneously allowed to testify to the cause of death. More particularly, he argues that Haynes was a lay person and therefore was not qualified to testify to the cause of death.
Haynes testified that he had been the deputy coroner for Talladega County since 1975. He testified that, on June 11, 1992, he went to the victim's house where he observed that the victim had received a gunshot wound to the head. He testified that it was his opinion, based on his training, education, and experience as a deputy coroner, that the victim died as a result of the gunshot wound.
It is well established that a coroner can testify as to the cause of death. See Woodard v. State, 401 So.2d 300
(Ala.Cr.App. 1981); Swanson v. State, 346 So.2d 1166
(Ala.Cr.App. 1977); Vaughn v. State, 347 So.2d 582
(Ala.Cr.App. 1977). Additionally, Haynes's testimony was cumulative of other testimony of qualified witnesses that the cause of the victim's death was the shot fired from the appellant's gun; therefore, no error prejudicial to the appellant occurred. Rule 45, Ala.R.App.P.; Johnson v. State,459 So.2d 982, 987 (Ala.Cr.App. 1984).
 IV
The appellant argues that the trial court erred in denying his motion for a judgment of acquittal because, he says, there was insufficient evidence presented by the State to sustain his murder conviction. More particularly, he argues that the State failed to prove that he had the intent to murder the victim, an element of murder, § 13A-6-2, Code of Alabama 1975.
The evidence presented by the State tended to show the following: Alvin Ragland *Page 60 
testified that, on the night of the incident, he and the appellant had had a few drinks together. He testified that the appellant, who was his neighbor, went home. He further testified that approximately 20 minutes later, the appellant came running toward his house yelling and crying, "I've done shot my baby," and "I killed my lady." Ragland testified that while he was calling the police, the appellant fled into the woods and was not apprehended until the next morning.
Carlton Dark, the victim's son, testified that on the night of the incident, he was awakened from his sleep to find the appellant standing in the living room crying, "Oh, I've done shot my baby."
Dr. Kenneth Warner testified that he performed the autopsy, which revealed that the victim died as a result of a shotgun wound to the face.
When reviewing a challenge to the sufficiency of the evidence, this Court must view the evidence in the light more favorable to the State and cannot substitute its judgment for that of the jury. Wells v. State, 619 So.2d 228
(Ala.Cr.App. 1993); Marks v. State, 581 So.2d 1182
(Ala.Cr.App. 1990). In Jones v. State, 591 So.2d 569, 574
(Ala.Cr.App. 1991), this court stated:
 " '[T]he element of intent, being a state of mind or mental purpose, is usually incapable of direct proof, [and] it may be inferred from the character of the assault, the use of a deadly weapon and other attendant circumstances.' Johnson v. State, 390 So.2d 1160, 1167 (Ala.Cr.App.), cert. denied, 390 So.2d 1168 (Ala. 1980). Accord, Fears v. State, 451 So.2d 385, 387 (Ala.Cr.App. 1984); Young v. State, 428 So.2d 155, 158 (Ala.Cr.App. 1982)."
Additionally, in Bishop v. State, 482 So.2d 1322, 1326
(Ala.Cr.App. 1985), this court held:
 " 'Intent may be presumed from the act of using a deadly weapon. McArdle v. State, 372 So.2d 897
(Ala.Crim.App.), cert. denied, 372 So.2d 902
(Ala. 1979), and from the character of the assault, including the nature and amount of force used in the fatal injury. Flint v. State, 370 So.2d 332
(Ala.Crim.App. 1979).'
 "Chaney v. State, 417 So.2d 625, 627
(Ala.Crim.App. 1982). 'However, this evidence must be sufficient to allow the jury to conclude, by fair inference, that the appellant was shooting at the person (named in the indictment) in particular with the intent to murder him.' Free v. State, 455 So.2d 137 (Ala.Crim.App. 1984). In Underhill on Criminal Evidence, § 540 (3d ed. 1923), we find the following statement regarding proof of intent in an attempted murder charge:
 " 'Thus, as a general rule, the force or violence which was employed must be proven to have been intentional. . . . The intention to do great bodily harm, to murder or commit any other crime by means of an assault, may be inferred from the circumstances. Circumstantial evidence is usually the only available evidence of intention aside from the declarations of the accused. The intention may be inferred from the force or direction, or from the natural or contemplated result of the violence employed, from the weapon or implement used by the accused, from his threats or prior conduct towards the person assaulted, and generally from the extent and effect of the injury inflicted, or from any deliberate action which is naturally attempted and usually results in danger to the life of another.' "
A review of the facts indicates that there was sufficient evidence from which the jury could infer that the appellant intended to shoot the victim; thus, the trial court's ruling was proper.
 V
The appellant argues that the trial court incorrectly instructed the jury on evidence of flight. He argues that, because the only evidence of flight was the fact that he was not at the scene when the police arrived, there was insufficient evidence to support an instruction to the jury on flight.
In Sartin v. State, 615 So.2d 135, 137 (Ala.Cr.App. 1992), this court stated:
 " 'In a criminal prosecution the state may prove that the accused engaged in flight to avoid prosecution. This principle *Page 61 
is based upon the theory that such is admissible as tending to show the accused's consciousness of guilt. The flight of the accused is admissible whether it occurred before or after his arrest.
 " 'The state is generally given wide latitude or freedom in proving things that occurred during the accused's flight. This is especially true of those acts of the accused which tend to show that the flight was impelled by his consciousness of guilt.'
 "C. Gamble, McElroy's Alabama Evidence § 190.01(1) (4th ed. 1991) (citations omitted). See also 2 Wigmore, Evidence § 276(4) (Chadbourn rev. 1979); Chandler v. State, 555 So.2d 1138
(Ala.Cr.App. 1989)."
The record reveals that the appellant fled the scene of the incident and turned himself in to authorities the following morning. Thus, the trial court did not err in receiving evidence of the appellant's flight.
 VI
The appellant argues that the prosecutor improperly commented on his failure to testify. Specifically, he argues that the following comments were prejudicial:
 "I submit to you there is not one shred of evidence from this witness stand that he left there for any other reason, ladies and gentlemen. He didn't leave there — there's not one shred of evidence —
". . . .
 ". . . Well, folks, there were three people in that house that night. Carlton Dark was asleep. He woke up. Judy Gail Dark — where are the pictures, please? Her lips are sealed and her eyes are closed and I've brought you every piece of evidence that I could bring you as to what happened —"
After considering the comments and viewing them in the context of the entire argument, we hold that the argument of the prosecutor could not have been construed by the jury as a comment on the appellant's failure to testify. The entire argument is as follows:
 "[Prosecutor]: I submit to you that under the law, as y'all are the triers of the fact, that you can presume the use of [a] deadly weapon in this case is an inference that he intended to caused the murder of another person. There's no question that he was engaged in the conduct. Intent is something somebody has got in their mind. That's why you have got to look at the facts and the circumstances. Relative to that, I submit to you that not only that — we are talking about where a man lives. Somebody shot in the face, he's got a truck out front and he leaves there. He leaves there. He doesn't stay there and I think the Judge will give you a chance —
 "[Defense counsel]: Judge could we get an objection in. I object to that line of argument. There's been no testimony that he leaves there.
"THE COURT: Overruled.
 "[Prosecutor]: Folks, I don't know where I've been for the last two days — I don't know where [defense counsel] has been, but from my understanding of the evidence he ran out of that house and if I misstate something, please hold it against me personally and not the folks that I represent, the deceased's family, but I submit to you that he ran out of that house and he told somebody to call the police and the ambulance or both of them and they called and in ten minutes or so they are there. There is not one person that's hit this witness stand that said the defendant was there. This is where he lives. He cut a trail and I submit to you that's another fact that when you weigh this case —
"[Defense counsel]: I object, Judge.
"THE COURT: On what?
 "[Defense counsel]: That he said he cut a trail. I object to that line of argument. There's been no evidence that he cut a trail. It is improper and I object to it.
 "THE COURT: The jury can remember what the evidence is. Let's move on.
 "[Prosecutor]: Folks, that's my country way of saying he left. There's no question he left there. I don't think there is any dispute in this courtroom. I think the Judge will give you a charge as to what we call flight. I think the Judge will tell you *Page 62 
that there's been evidence to show that after the alleged homicide the defendant fled the scene of the homicide. Whether you call it fleeing, whether you call it running or whether you call it leaving, he was gone when the emergency personnel got there. He was gone when the police got there. You've got to look at it. His truck was there. That's his house and they don't pick him up until sometime the next day. Of course, it is always permissible for such evidence of flight to be offered in order for a jury to decide whether the defendant fled the scene of the alleged offense, and if so, whether he fled as a result of a consciousness of guilt or for some other reason. In other words, you get to decide as the triers of the facts did he leave there as a result of a consciousness of guilt of the act that he did on that occasion, or did he leave for some other reason. I submit to you there is not one shred of evidence from this witness stand that he left there for any other reason, ladies and gentlemen. He didn't leave there — there's not one shred of evidence —
 "[Defense counsel]: Would you move to the side bar a minute so I can make my next objection?
 "(COUNSEL APPROACH BENCH AND THE FOLLOWING OBJECTION BY [DEFENSE COUNSEL] MADE AT BENCH)
 "[Defense counsel]: Judge, at this time I move for mistrial.
"THE COURT: Overruled.
 "[Defense counsel]: Can I state my grounds to get them in the record?
"THE COURT: Yes.
 "[Defense counsel]: On the grounds of the 5th Amendment rights of the defendant.
"THE COURT: Overruled.
"(END OF DISCUSSION AT BENCH.)"
The second allegedly objectionable statement occurred during the prosecutor's rebuttal.
 "PROSECUTOR: . . . From here, from this microphone, from the evidence that comes in. As I told you in opening statement, lawyer's talk don't have anything to do with it. What [defense counsel], what I say, we are just up here pointing out different things about the evidence. It hasn't got one thing to do with it, but what comes to you from here. Mr. Adams always during it — he wants you to say, well was the gun loaded. He objects to [another prosecutor] arguing about flight and cut a trail and saying there's no evidence of it. I think everyone of you knows there is evidence that he fled from out there. It's going to be up to you as to whether or not that's flight. I don't think there's any question about that. But then he wants to say, we don't know whether the gun was unloaded or loaded. Well there's not evidence of that whatsoever. We don't know whether or not that he went back to the bedroom and got the gun and put the shell in the bottom and ratchets it like that. That's right. We don't, because there is no evidence of that. There's none whatsoever. We know that the gun was loaded. We know that. We know and contrary as he says, we know that once you put that shell in the gun and once you've got that safety off and you pull the trigger, it fires. We know that and we know the gun was in proper working order, but see that still doesn't take somebody's life. You know this gun is unloaded. You just heard me pull that trigger. If I leveled this barrel down to somebody's face right there, how uncomfortable you would be, even knowing that it is unloaded. But see, it takes several things. We know of a bunch of things, but the evidence that comes to you from here he says why, why, why. Well Folks, there were three people in that house that night. Carlton Dark was asleep. He woke up. Judy Gail Dark — where are the pictures, please?
". . . .
 "[Prosecutor]: Her lips are sealed and her eyes are closed and I've brought you every piece of evidence that I could bring you as to what happened —
 "[Defense counsel]: Judge, may I enter an objection and have a side bar meeting?
"THE COURT: Yes.
". . . .
 "[Defense counsel]: I object and move for a mistrial on grounds he is referring that *Page 63 
he is — he is commenting on Orlando Long's failure to testify; and now he's arguing her lips are sealed and her eyes are closed. He is referring or making a comment on the defendant's failure to testify or put any evidence —
 "[Prosecutor]: I'm arguing exactly what he argued, Your Honor.
"THE COURT: Overruled.
 "[Prosecutor]: He said Carlton was in there, and that she was dead.
"THE COURT: Move on.
 "[Prosecutor]: Look at this. This picture will tell you something. Where is she? She fell right where she was standing. She is really up against the wall and folks, Jon said I was going to talk about it. You see, that bullet — she's 5'9" tall. The center of that window is six inches from the top of her head. That puts one thing. That puts the gun not falling and shooting, because don't you remember those deviations left to right, no up or down. It's coming in on a level pattern. It breaks every bone in her face and it severs her spinal column and she goes down just like that. . . ."
The record indicates that the prosecutor, in rebuttal, was attempting to draw a legitimate inference from the evidence, i.e., the appellant possessed the requisite intent to murder the victim.
 " ' "[A]rgument of counsel that, in fact, is a reply in kind to an earlier argument of opposing counsel would not be subject to objection, even though such argument otherwise would be impermissible." Ex parte Rutledge, 482 So.2d 1262, 1264 (Ala. 1984). (emphasis in [Rutledge]). . . . "The prosecutor has a right to comment on and answer statements made by defense counsel in argument to the jury." Dossey [v. State], 489 So.2d [662, 665 (Ala.Cr.App. 1986)]. A prosecutor's statement that the defense has failed to put on evidence as promised by defense counsel is not a comment on the defendant's failure to testify. Thomas v. State, 555 So.2d 320, 320-21
(Ala.Cr.App. 1989).
 " ' "Where the prosecutor on his own initiative asks the jury to draw an adverse inference from a defendant's silence, Griffin [v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106
(1965)] holds that the privilege against compulsory self-incrimination is violated. But where as in this case the prosecutor's reference to the defendant's opportunity to testify is a fair response to a claim made by defendant or his counsel, we think there is no violation of the privilege.
" ' ". . . .
 " ' " '[The] central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence. . . .' To this end it is important that both the defendant and the prosecutor have the opportunity to meet fairly the evidence and arguments of one another. . . ." ' "
Donahoo v. State, 647 So.2d 24, 25-26 (Ala.Cr.App. 1994).
Moreover, even if the statement might have been construed as an improper comment on the appellant's failure to testify, any error would have been harmless in this case.
 "The United States Supreme Court has . . . held . . . 'that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction.' Chapman v. California, 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705
(1967). Chapman involved comments on the failure of defendants to testify at trial. . . .
 "In United States v. Hasting, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983), the Court cited 'the interest in the prompt administration of justice and the interests of the victims' in reversing the judgment of a lower federal appellate court for not applying the harmless error doctrine to a prosecutor's comment on a defendant's failure to proffer evidence to rebut testimony presented by the prosecution, when the defendant had elected not to testify. 461 U.S. at 509, 103 S.Ct. at 1980. In so holding, the Court observed that '[s]ince Chapman, the Court has consistently made *Page 64 
clear that it is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including must constitutional violations,' id. (citations omitted), and stated that the proper question for a reviewing court to ask is: '[A]bsent the prosecutor's allusion to the failure of the defense to proffer evidence to rebut the testimony of the victims, is it clear beyond a reasonable doubt that the jury would have returned a verdict of guilty?' Id. at 510-11, 103 S.Ct. at 1981.
 "Our harmless error rule provides in pertinent part:
 " 'No judgment may be reversed or set aside . . . on the ground of misdirection of the jury unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it would appear that the error complained of has probably injuriously affected substantial rights of the parties.'
"Rule 45, Ala.R.App.R.
 "This rule provides for 'an examination of the entire cause' and, like both the California constitutional provision and the federal statute compared in Chapman, it emphasizes errors 'that "affect substantial rights" of a party.' Chapman, 386 U.S. at 23, 87 S.Ct. at 828."
Ex parte Greathouse, 624 So.2d 208, 210 (Ala. 1993).
In light of the evidence presented in this case, as well as the circumstances surrounding the prosecutor's comment, any error was harmless.
 VII
The appellant argues that the trial court was acting vindictively when it sentenced him to life imprisonment. More particularly, he argues that the trial court was punishing him for successfully setting aside his plea and proceeding to trial.
The appellant's argument is unsupported by the record. The record indicates that the judge before whom the appellant pleaded guilty to murder was Judge Sullivan. He was sentenced by Judge Sullivan to 21 years' imprisonment. Subsequently, the appellant was allowed to withdraw his plea and proceed to trial. Judge Fielding, rather than Judge Sullivan, presided over the trial and the sentencing hearing, which resulted in a sentence of life imprisonment.
In Ex parte Weeks, 591 So.2d 439, 440-41 (Ala. 1991), the Alabama Supreme Court stated:
 "In Alabama v. Smith, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989), the Supreme Court addressed the question whether a presumption of vindictiveness applied when a sentence imposed after trial is greater than the sentence previously imposed after a guilty plea. In Smith, the defendant agreed to plead guilty to burglary and rape charges in exchange for the State's dismissing a sodomy charge. The trial court accepted the plea bargain and sentenced the defendant to 30 years' imprisonment on each charge. The defendant later succeeded in having his guilty pleas vacated and was tried on rape, burglary, and sodomy charges. The jury returned a guilty verdict on all three charges and the trial court sentenced him to life imprisonment on the burglary conviction, a concurrent term of life imprisonment on the sodomy conviction, and a consecutive term of 150 years on the rape conviction.
 "The Supreme Court held that a presumption of vindictiveness does not apply in every case where the defendant receives a harsher sentence on retrial. Only in such circumstances where there is a 'reasonable likelihood' that the increased sentence is a product of vindictiveness will the presumption of vindictiveness apply. Smith, 490 U.S. at 799, 109 S.Ct. at 2205. 'Where there is no such reasonable likelihood, the burden remains upon the defendant to prove actual vindictiveness.' Id.
 "The Supreme Court specifically held that when a greater penalty is imposed after trial than was imposed after a guilty plea, there is no automatic presumption of vindictiveness. 'Even when the same judge imposes both sentences, the relevant sentencing information available to the judge after the plea will usually be considerably less than that available after a trial.' *Page 65 Id '[I]n the course of the proof at trial the judge may gather a fuller appreciation of the nature and extent of the crimes charged. The defendant's conduct during trial may give the judge insights into his moral character and suitability for rehabilitation.' Smith, 490 U.S. at 801, 109 S.Ct. at 2206."
There was no evidence presented by the appellant that indicated any vindictiveness on the part of the trial court in imposing a harsher sentence.
The judgment of the trial court is affirmed.
AFFIRMED.
All judges concur.
LONG, J., recuses.