[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 827 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 828 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 829 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 830 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 831 
The appellant, Anthony Boyd, was convicted of capital murder for the intentional murder during a kidnapping in the first degree, see § 13A-5-40(a)(1), Code of Alabama 1975. Following a sentencing hearing, the jury returned an advisory verdict recommending, by a vote of 10 to 2, the imposition of the death *Page 832 
penalty. A separate sentencing hearing in front of the trial court was held, and the trial court sentenced the appellant to death by electrocution.
The record contains a summary of the facts and evidence presented this offense, as rendered by the trial court. In pertinent part, it states as follows:
 "The victim of this crime was Gregory Huguley. The participants in this capital murder are the defendant, Anthony Boyd, Shawn Ingram, Marcel Ackles and Quintay Cox. All of these participants played an active role in the abduction and the murder of the victim. All were coconspirators and accomplices.
 "On July 31, 1993, Anthony Boyd, along with Shawn Ingram and Marcel Ackles, were looking for Gregory Huguley, a/k/a 'New York,' because Gregory Huguley had gotten cocaine from them several days before and he had failed to pay up. The charge for the cocaine was $200.00. These men were later joined by Quintay Cox, who provided a 9-millimeter Mack 11 automatic pistol. These men continued their search for Gregory Huguley and in the early evening of July 31, 1993, they spotted 'New York' on 15th Street in Anniston, Alabama. At this time they were riding in a blue van that Marcel Ackles had rented. The van approached 'New York' and then stopped. Shawn Ingram took the Mack 11 automatic pistol and walked over to 'New York' and told him to come here. 'New York' hesitated and then Shawn grabbed 'New York' and pushed him into the van and onto the floor by the first bench seat. After leaving the scene of the abduction, Quintay Cox [was] let out at Cooper Homes and [was] instructed to follow the others. The first stop of the defendant and the participants was at a gasoline station, where Marcel Ackles got out and purchased some gasoline in a plastic container. Then all of the participants, including the defendant and the victim, proceeded to a baseball field in the Munford community in North Talladega County, Alabama. During this trip Gregory Huguley was made to lie down on the floor board of the van by defendant Boyd and co-defendant, Shawn Ingram. He kept saying to his abductors, 'Do not kill me. I will get your money.' When the participants arrived at the baseball field between 7:00 p.m. and 8:00 p.m., Shawn Ingram made 'New York' lie down on a bench. Then Marcel Ackles taped 'New York's hands and mouth and the defendant, Anthony Boyd, taped his feet, all with duct tape. Then 'New York' was taped to the bench. At this time, Shawn Ingram doused gasoline on 'New York.' Then he made a two-foot trail of gasoline from the bench where 'New York' was lying. Then he lit the trail of gasoline which led to 'New York' and caused him to be caught on fire. The defendant and the other participants watched 'New York' burn for 10 to 15 minutes until the flame went out. During the burning 'New York' rolled over a few feet. Then at this point in time he died as a result of the burning. Then the defendant and Shawn Ingram left in the van and returned to Anniston, and Quintay Cox and Marcel Ackles returned to Anniston in Quintay's car. On the way back to Anniston, Marcel said to Quintay, 'We are all in this together. If one goes down, all go down.' They arrived back in Anniston around 7:45 to 8:00 p.m.
 "The murder of the victim, Gregory Huguley, was of the intentional killing type while the defendant committed murder during kidnapping in the first degree. The defendant possessed all of the requisite intent to sustain a conviction as charged in the indictment. He was an active and full participant in the death of the victim, Gregory Huguley."
 I.
The appellant argues that the prosecutor offered irrelevant and highly prejudicial photographs as evidence during the guilt phase of the trial. The photographs depict the victim following the offense and were used at trial by the coroner to illustrate the nature and location of the injuries of the victim. The appellant submits that these photographs may have been admissible during the sentencing hearing to support the especially heinous, atrocious, or cruel aggravating circumstance, § 13A-5-49(8), Code of *Page 833 Alabama 1975, but he argues that they were improperly admitted during the guilt phase.
The photographs illustrated and corroborated the coroner's testimony concerning the injuries, and further corroborated the testimony of an accomplice, Quintay Cox, who stated that the victim had been taped to a board and that his mouth had been sealed with tape before he was set on fire. Therefore, the evidence was relevant and material at the guilt stage, despite the gruesome nature of the photographs.
In Johnson v. State, 620 So.2d 679, 692 (Ala.Cr.App. 1992), rev'd on other grounds, 620 So.2d 709 (Ala. 1993), cert. denied, 510 U.S. 905, 114 S.Ct. 285, 126 L.Ed.2d 235 (1993), the appellant argued that grossly inflammatory photographs should not have been allowed into evidence at the guilt and penalty stages of the trial. In holding that the photographs were admissible at both stages, this court stated:
 "We have reviewed the challenged photographs and, although they are not pleasant to look at, we conclude that the trial court did not err in admitting them at either stage of the proceedings.
 " '[P]hotographs that show the external wounds of a deceased victim are admissible even though the evidence is gruesome and cumulative and relates to undisputed matters.' Ex parte Siebert, 555 So.2d 780, 783 (Ala. 1989), cert. denied, 497 U.S. 1032 110 S.Ct. 3297, 111 L.Ed.2d 806 (1990). See also Ex parte Bankhead, 585 So.2d 112 (Ala. 1991). '[P]hotographic evidence, if relevant, is admissible even if it has a tendency to inflame the minds of the jurors.' Ex parte Siebert at 784. See also Ex parte Bankhead. We find no error in the trial court's admission of the photographs at the guilt phase of the trial. See, e.g., Smith v. State, 581 So.2d 497 (Ala.Crim.App. 1990), rev'd on other grounds, 581 So.2d 531 (Ala. 1991) (photographs of victim's decomposed and bloated body properly admitted); Dabbs v. State, 518 So.2d 825 (Ala.Crim.App. 1987) (photographs of victim's head injuries taken during autopsy were gruesome but necessary to demonstrate extent of injuries); Hamilton v. State, 492 So.2d 331 (Ala.Crim.App. 1986) (photograph of deceased's exposed scalp properly admitted into evidence)."
There was no error in the admission of the photographs during the guilt phase of the appellant's trial.
 II.
The appellant argues that the State's use of its peremptory challenges was discriminatory as to both gender and race.
 A.
The appellant argues that he presented a prima facie case of racial discrimination concerning the prosecutor's peremptory strikes and that a remand is necessary because the trial court improperly based its determination that the appellant had failed to establish a prima facie case solely on the racial composition of the jury. At trial, the appellant objected to the State's use of its peremptory challenges, alleging that the challenges were not race-neutral. However, in support of his objection, the appellant stated only that the prosecutor used 7 of his 14 strikes against black veniremembers. In light of the entire record, this challenge did not satisfy his burden of proof.
The following transpired concerning this matter:
 "MR. WILLINGHAM: Judge, we show there were 39 after the challenges and whoever was released — their 39th potential juror —
". . . .
 "MR. WILLINGHAM: On the venire and there were 14 blacks out of that which would represent 36 percent of the venire were black. The defendant in this case is a black male. Out of those 14 that were on the venire, the State used 7 of their 14 strikes. They used 50 percent of their strikes to remove blacks from the venire. By that they removed 50 percent of the blacks from the venire. Those that they removed were Number 123, J. W., Number 117, M. W., Number 19, R. W., Number 100, T. R., Number 78, P. M., Number 122, W. and number 75, M. We would submit that just based on the percentage that were struck that that would show a prima *Page 834 
facie case and that they were released on — there would be no race-neutral reason for exercising the strikes. One I see probably an obvious reason, but on the majority of them I would submit there is not [any] race-neutral reason for exercising the strikes.
"MR. RUMSEY: Is that all?
"MR. WILLINGHAM: Yes, sir.
 "MR. RUMSEY: The only comment the State has, Your Honor, is he's just failed to make a prima facie case.
 "THE COURT: The Court agrees with the State and finds that there is no prima facie case made to the Court at this time. Are there any other matters to take up?
 "MR. RUMSEY: Yes, sir. I believe there are 7 — your records show, Bill, that there were 7 actually serving out of the 12 on the jury. Is that correct? Is that what your figures show?
"MR. WILLINGHAM: Yes, sir.
 "MR. RUMSEY: Judge, we think that the only person that has used race in this case is Mr. Willingham. Every single strike he's made is on a white. Every single one. That's strictly prohibited by — the Alabama Supreme Court says you are strictly prohibited from doing that. He's interjected race in striking the jury by striking obviously every single strike as a white. He wants to refer to us in Batson and he's sitting there violating the Alabama Supreme Court up one side and down the other striking nothing but whites. He's the one that's interjecting race in it. The State believes it is due to be set aside and start over. We've already got two days in the case. We might as well make the most of it. I want the record to reflect that, that every single one of his strikes is against white.
 "THE COURT: Is that agreeable, Mr. Willingham, that every strike you made was a white male or female?
"MR. WILLINGHAM: Yes, sir, that's correct.
 "THE COURT: It's in the record. There is nothing pending before the Court right now relative to a motion. We will move forward.
". . . .
 "THE CLERK: Mr. Clerk, will you go get those 14 jurors and Mr. Dison, if you will, take them to the jury room.
 "THE COURT: If I'm not mistaken there are 7 blacks on this jury panel that would be of the first 12. Is that right, Mr. Willingham? If I'm not mistaken the blacks that will be serving on this jury will be approximately 60 percent. The Court takes judicial knowledge of it. Is that not right?
"MR. WILLINGHAM: Yes, sir.
 "THE COURT: The Court takes judicial knowledge of the racial makeup of this county, which is right at 32 percent black. It is right at 31 percent black, but the people that are of the age to serve would be approximately 27 percent."
Following a short recess and discussion concerning another matter, the trial court made the following statement:
 "THE COURT: Okay, before I forget it, I'll do that. A few minutes ago I put some statistics in relative to percentages in regard to the Batson motion made by the defendant. The Court just wants to set out in the record that these are just one of many things legal factors that the Court has to consider in regard to whether the Defendant has made a prima facie showing of racial discrimination of the State's strikes. It was previously said that the Court finds that the defendant had failed to make a prima facie showing of discriminatory strikes by the State."
Thus, the appellant's objection was based solely on the number of blacks struck without any supporting circumstances. Furthermore, the trial court's reference to the racial composition of the jury in comparison to that of the venire panel was only one consideration by the trial court in examining all of the circumstances. Thus, the trial court's decision did not violate Ex parte Thomas, 659 So.2d 3 (Ala. 1994).
The trial court properly determined that the appellant failed to present a prima facie case of discrimination. In George v.State, [Ms. CR-94-387, April 19, 1996], ___ So.2d ___ (Ala.Cr.App. 1996), reversed on other *Page 835 
others, [Ms. 1951306, Oct. 26, 1996] ___ So.2d ___ (Ala. 1996), this Court held that the appellant failed to establish a prima facie case of racial discrimination where he had simply argued that the State used 5 of its 14 peremptory strikes to remove blacks from the jury. In that case, 7 black jurors served as well as a black alternate. This Court held that the appellant's argument had been insufficient to meet his burden of proof in presenting a prima facie showing of racial discrimination.
 " 'The trial court's finding that a defendant did not present a prima facie case of discrimination under Batson is reviewed under a "clearly erroneous" standard. Wilson v. State, 690 So.2d 449 (Ala.Cr.App. 1995). "In determining whether there is a prima facie case, the court is to consider 'all relevant circumstances' which could lead to an inference of discrimination." Ex parte Branch, 526 So.2d 609, 622 (Ala. 1987). In Branch, the Alabama Supreme Court set forth a nonexhaustive list of nine types of evidence that could be used to raise this inference.
 " ' "1. Evidence that the 'jurors in question share[d] only this one characteristic — their membership in the group — and that in all other respects they [were] as heterogeneous as the community as a whole.' [People v.] Wheeler, 22 Cal. 3d [258,] at 280, 583 P.2d [748,] at 764, 148 Cal.Rptr. [890,] at 905 [(1978)]. For instance 'it may be significant that the persons challenged, although all black, include both men and women and are a variety of ages, occupations, and social or economic conditions,' Wheeler, 22 Cal.3d at 280, 583 P.2d at 764, 148 Cal.Rptr. at 905, n. 27,
 " ' "2. A pattern of strikes against black jurors on the particular venire; e.g., 4 of 6 peremptory challenges were used to strike black jurors. Batson [v. Kentucky], 476 U.S. [79] at 97, 106 S.Ct. [1712] at 1723 [90 L.Ed.2d 69
(1986)].
 " ' "3. The past conduct of the offending attorney in using peremptory challenges to strike all blacks from the jury venire. Swain [v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965)].
 " ' "4. The type and manner of the offending attorney's questions and statements during voir dire, including nothing more than desultory voir dire. Batson, 476 U.S. at 97, 106 S.Ct. at 1723; Wheeler, 22 Cal.3d at 281, 583 P.2d at 764, 148 Cal.Rptr. at 905.
 " ' "5. The type and manner of questions directed to the challenged juror, including a lack of questions, or a lack of meaningful questions. Slappy v. State, 503 So.2d 350, 355
(Fla.Dist.Ct.App. 1987); People v. Turner, 42 Cal.3d 711, 726 P.2d 102, 230 Cal.Rptr. 656
(1986); People v. Wheeler, 22 Cal.3d 258, 583 P.2d 748, 764, 148 Cal.Rptr. 890 (1978).
 " ' "6. Disparate treatment of members of the jury venire with the same characteristics; or who answer a question in the same of similar manner; e.g., in Slappy, a black elementary school teacher was struck as being potentially too liberal because of his job, but a white elementary school teacher was not challenged. Slappy, 503 So.2d at 352 and 355.
 " ' "7. Disparate examination of members of the venire; e.g., in Slappy, a question designed to provoke a certain response that is likely to disqualify a juror was asked to black jurors, but not to white jurors. Slappy, 503 So.2d at 355.
 " ' "8. Circumstantial evidence of intent may be proven by disparate impact where all or most of the challenges were used to strike blacks from the jury. Batson, 476 U.S. at 93, 106 S.Ct. at 1721; Washington v. Davis, 426 U.S. [229] at 242 [96 S.Ct. 2040, 2049, 48 L.Ed.2d 597 (1976)].
 " ' "9. The offending party used peremptory challenges to dismiss all or most black jurors, but did not use all of his peremptory challenges. See Slappy, 503 So.2d at 354, Turner, supra."
 " 'Branch, 526 So.2d at 622-23. The fact that the prosecution engaged in a pattern of strikes against black jurors is but one factor the court may consider. *Page 836 
" '. . . .
 " 'When considered alone, evidence of the prosecution's use of a large number of its peremptory strikes to exclude black jurors would allow, but would not compel, a finding of prima facie discrimination. Ex parte Thomas, [659] So.2d [3] (Ala. 1994), (defendant may establish a prima facie case solely on prosecution's use of its strikes against black venire-members). Other types of relevant evidence specified in Branch
may be examined to determine whether the inference of discrimination has been raised. Even if the prosecution uses all of its peremptory strikes to exclude black jurors, a trial court is not required to rule that a prima facie case of discrimination has been made if other relevant evidence sheds light upon the issue.'
 "Mines v. State, 671 So.2d 121, 123 (Ala.Cr.App. 1995) (emphasis in original).
 "The party alleging a Batson violation has the burden of establishing a prima facie case of discrimination. The appellant did not meet that burden. The only evidence presented that a Batson
violation occurred was that the State used 5 of its 14 strikes to remove blacks. The trial court's ruling that no prima facie case had been established was not clearly erroneous."
George v. State, ___ So.2d at ___.
A trial court's determination concerning the establishment of a prima facie case of racial discrimination is to be accorded great deference on appeal, Folsom v. State, 668 So.2d 114
(Ala.Cr.App. 1995), and in this case the trial court's determination was not clearly erroneous.
 B.
The appellant argues that the prosecutor engaged in gender-based discrimination in removing discriminated against females with his peremptory challenges. The appellant failed to object on this ground at trial; therefore, this claim must be reviewed under the plain error standard, Rule 45A, Ala.R.App.P. The absence of an objection in a case involving a death penalty does not preclude review of the issue; however, the appellant's failure to object does weigh against his claim of prejudice.Arthur v. State, 711 So.2d 1031 (Ala.Cr.App. 1996), citingKuenzel v. State, 577 So.2d 474, 489 (Ala.Cr.App. 1990), affirmed, 577 So.2d 531 (Ala. 1991), cert. denied,502 U.S. 886, 112 S.Ct. 242,116 L.Ed.2d 197 (1991).
In his appellate brief, the appellant argues that a prima facie case of gender discrimination exists because the prosecutor used 10 of his 14 peremptory strikes to remove 10 of 26 female jurors. However, a review of the strike list included in the record, as well as the voir dire examination, indicates that the appellant used 10 of his 13 strikes to remove female jurors. There were no supporting circumstances to indicate gender discrimination or to render a failure by the trial court to find the existence of a prima facie case of gender discrimination plain error, i.e., error that would adversely affect the substantial rights of the appellant. Similarly, inGeorge v. State, ___ So.2d at ___, this Court found that the record did not supply an inference of gender discrimination. "Before the plain error analysis can come into play in a Batson
issue, the record must supply an inference that the prosecution engaged in purposeful discrimination. Ex parte Watkins,509 So.2d 1074 (Ala.), cert. denied, 484 U.S. 918, 108 S.Ct. 269,98 L.Ed.2d 226 (1987); Rieber [v. State, 663 So.2d 985
(Ala.Cr.App. 1994), affirmed, 663 So.2d 999 (Ala. 1995)]." Pacev. State, 714 So.2d 316, 318 (Ala.Cr.App. 1995).
The record supplies no indication of discrimination by the prosecution in its peremptory challenges.
 III.
The appellant argues that the trial court failed to instruct the jury on the lesser included offense of felony murder. The appellant argues that such an instruction was warranted because, he says, he was forced by his accomplices to participate in the offense and because, he says, he was not a willing participant but took part in the offense only at gunpoint.
The record indicates that the trial court instructed the jury as to the lesser *Page 837 
included offenses of intentional murder and kidnapping in the first degree. The appellant did not object to the trial court's failure to instruct on felony murder; therefore, this claim must be analyzed pursuant to the plain error rule. Rule 45A, Ala.R.App.P.
There was no evidence presented at trial to support a charge on felony murder, and no evidence that the appellant was forced to participate in the offense. The State's evidence indicated that the appellant was a willing participant. Moreover, the appellant offered an alibi theory of defense, in that he presented a number of witnesses who stated that on the night of the offense he was at a birthday party and subsequently spent the night at a hotel with his girlfriend. "The Court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense." § 13A-1-9(b), Code ofAlabama 1975. See also Coral v. State, 628 So.2d 954, 963
(Ala.Cr.App. 1992), aff'd, 628 So.2d 1004 (Ala. 1993), cert. denied, 511 U.S. 1012, 114 S.Ct. 1387, 128 L.Ed.2d 61 (1994) (the trial court properly refused to give lesser included offense charges concerning felony murder in a capital murder case in which the appellant had raised an alibi defense during the guilt phase).
Moreover, pursuant to § 13A-3-30(d)(2), Code of Alabama 1975, the defense of duress is inapplicable to a charge of capital murder and therefore could not support a lesser included offense instruction in a capital murder case where such an instruction would be based on that theory.
 IV.
The appellant argues that the trial court committed reversible error in denying his motion for a continuance. The appellant argues that he needed to secure a witness to investigate and testify concerning mitigating evidence. He further notes that the State was not ordered to turn over grand jury testimony until a week before trial, and that one of the appellant's attorneys was not appointed until less than a month before trial.
The record indicates that the appellant was indicted on June 28, 1994, and was arraigned on August 3, 1994. The appellant's trial was set for February 1995, and, on January 12, 1995, a status conference was held at which the appellant's counsel indicated that his mitigation expert might require more time to complete her investigation. A conference was held on January 17, 1995, in order for the mitigation expert to inform the court concerning her progress. The trial court urged the expert to complete the investigation so that the trial could continue as scheduled; however, the case did not go to trial until the middle of March 1995. A week before trial, defense counsel informed the court that the mitigation expert would soon be completing her investigation and might be finished by the end of the week. He stated that he was ready to begin the guilt phase. Defense counsel submitted a letter from his expert which was stamped "February 22, 1995," but which was dated March 5, 1995, and indicated that the expert needed more time. The trial court denied the continuance. On March 13, 1995, the defense counsel announced that certain necessary witnesses were not present, whereupon the trial court ordered that attempts to be made to locate the witnesses. On March 14, 1995, the appellant announced that he was ready to go to trial.
There was no indication in the record that the appellant was deprived of any witness, evidence, or investigation. He presented the testimony of a number of witnesses at both stages of trial. The appellant made no claim that he could have benefitted from a continuance and there was no showing to that effect. Moreover, the appellant has made no showing that the anticipated evidence was material and competent or even the exact nature of the evidence. Ex parte Saranthus,501 So.2d 1256 (Ala. 1986) (one of the factors for consideration in reviewing the denial of a continuance on this ground is whether the anticipated evidence would have been material and competent).
" 'A motion for [a] continuance due to lack of time for adequate preparation is a matter entirely and exclusively within the sound discretion of the trial court and its *Page 838 
ruling will not be reversed on appeal absent a plain and palpable showing of abuse.' Reynolds v. State, 539 So.2d 428,429 (Ala.Cr.App. 1988)." Baker v. State, 683 So.2d 1, 5
(Ala.Cr.App. 1995).
There is no indication that the appellant was prejudiced by receiving a transcript of the grand jury testimony a week before trial, especially since the record indicates that his counsel was able to use certain of this testimony in his cross-examination of State's witnesses. Moreover, although the appellant argues that one of his lawyers was not appointed until a month before trial, the appellant had been represented before then by another counsel who continued in the case in an active role, and there was no claim or indication that the assisting attorney needed additional time.
As to the mitigation expert, she had two months to investigate and prepare any report. There was no evidence that the appellant was deprived of any benefit from her possible inability to complete her investigation. There was no testimony or allegation concerning any additional evidence that might have been forthcoming or that would have been material and competent to the appellant's case. Thus, there was no error in the trial court's failing to grant the appellant a continuance.
 V.
The appellant argues that the State improperly used evidence of prior bad acts and bad character against him. The appellant refers specifically to testimony from a witness as to the victim's kidnapping, implying, he argues, that he was a drug dealer.
The record indicates that a number of State's witnesses testified that the victim had been threatened by the appellant and his accomplices because the victim owed the appellant and the accomplices money for drugs he had purchased from them. There was testimony that the appellant and the accomplices had made statements alluding to the victim's having taken their drugs or owing them money for drugs, and their plans to "get" him. During the testimony of one such witness, defense counsel elicited testimony on cross-examination concerning the fact that the victim sold drugs. Thereafter, in response on re-direct examination, the prosecutor elicited testimony that the victim was a "runner," i.e., he would sell crack or cocaine for another party and, in return, would get drugs for having made the sale. The appellant was then identified as the individual for whom the victim worked as a runner. On recross-examination, defense counsel again elicited testimony that the victim "ran all over . . . selling cocaine."
This testimony, concerning the furnishing and selling of drugs by the appellant and the victim, was admissible as motive evidence. The appellant did not object to the admission of this testimony and, in fact, elicited similar testimony concerning the actions of the victim. The general exclusionary rule that provides that evidence of collateral crimes or prior bad acts is inadmissible is subject to certain exceptions, one of which is to show motive. Knight v. State, 675 So.2d 487 (Ala.Cr.App. 1995), writ denied, 675 So.2d 502 (Ala. 1996). If the prior bad act falls within this exception, and is relevant and reasonably necessary to the State's case, and the evidence that the accused committed that act is clear and conclusive, it is admissible. Id., citing Averette v. State, 469 So.2d 1371, 1374
(Ala.Cr.App. 1985).
In Smith v. State, 585 So.2d 223 (Ala.Cr.App. 1991), a murder case, the appellant contended that the trial court had improperly allowed testimony concerning his drug dealings in cocaine into evidence. In holding that the evidence was admissible, this Court stated, "the undisputed evidence established that the appellant killed the victim because the victim owed him money for 'crack' cocaine. Thus, we are of the opinion that such evidence tended to show the appellant's motive for killing the victim and was, therefore, admissible.Mayberry v. State, 419 So.2d 262 (Ala.Crim.App. 1982)." Smithv. State, supra at 224.
"Testimony going to show motive, though motive is not an element of the burden of proof resting on the State, is always admissible. . . . 'Where the proffered evidence has a tendency, even though slight, to enlighten the jury as to the culpability of *Page 839 
the defendant, then it is relevant and properly admissible.' "Donahoo v. State, 505 So.2d 1067, 1071 (Ala.Cr.App. 1986), quoting Waters v. State, 357 So.2d 368, 371 (Ala.Cr.App.), cert. denied, 357 So.2d 373 (Ala. 1978).
 "The motive for a homicide is always a proper subject of inquiry and proof. Brothers v. State, 236 Ala. 448, 183 So. 433; Balentine v. State, Ala.Cr.App., 339 So.2d 1063; Bynum v. State, Ala.Cr.App., 348 So.2d 804.
 "In cases where, as here, the evidence is circumstantial, a wide range of testimony is admissible to show the motive of defendant for committing the crime charged. Turner v. State, 224 Ala. 5, 140 So. 447; Harden v. State, 211 Ala. 656, 101 So. 442.
 "In a case where the evidence is circumstantial, evidence of motive becomes of great importance. Harden v. State, supra; Hardy v. State, 51 Ala. App. 489, 286 So.2d 899. When circumstances point to the guilt of an accused, evidence of his motivation, even though weak, is admissible. In McClendon v. State, 243 Ala. 218, 8 So.2d 883, the Supreme Court said:
 " ' "When it is shown that a crime has been committed and the circumstances point to the accused as the guilty agent, then proof of a motive to commit the offense, though weak and inconclusive evidence, is nevertheless admissible." ' "
Chambliss v. State, 373 So.2d 1185, 1207-08 (Ala.Cr.App.), cert. denied, 373 So.2d 1211 (Ala. 1979). See also Knotts v.State, 686 So.2d 486 (Ala.Cr.App. 1995).
In the present case, evidence of the appellant's and the victim's involvement with one another in drug dealings was relevant and admissible as motive in the present offense.
 VI.
The appellant argues that the trial court failed to consider mitigating evidence and that it improperly failed to find the existence of many mitigating circumstances. Specifically, the appellant argues that the trial court failed to consider and to find the following statutory mitigating circumstances: that two of the appellant's codefendants received "disparate and more lenient treatment" (two of the codefendants did not receive the death penalty but rather life imprisonment without parole); that the offense was committed by the appellant while he was under extreme mental and emotional disturbance, see §13A-5-51(2), Code of Alabama 1975; and that the capacity of the appellant to conform his conduct to the requirements of law was substantially impaired, see § 13A-5-51(6), Code of Alabama
1975. The appellant also argues that the trial court failed to find and consider as a mitigating circumstance the age of the appellant, see § 13A-5-51(7), Code of Alabama 1975, who was 21 years old at the time of the crime (he alleges that the trial court incorrectly relied on the fact that the appellant was 23 at the time of sentencing). The appellant argues that the trial court failed to find and to consider the following nonstatutory mitigating circumstances: that his family members asked the jury to spare his life; that he was a positive influence in his community; that he was a good father with compassion and concern for his family; and that he had exhibited good behavior in prison.
The record indicates that the trial court found the existence of two aggravating circumstances: that the murder occurred during a kidnapping in the first degree and that the murder was especially heinous, atrocious, or cruel. The trial court also entered specific findings as to each statutory mitigating circumstances, but found the existence of only the statutory mitigating circumstance that the appellant had no significant history of prior criminal activity. The trial court considered, but did not find, the mitigating circumstance that the appellant was under the influence of extreme mental or emotional disturbance or that his ability to conform his conduct to the requirements of law was substantially impaired. In his findings concerning the existence of non-statutory mitigating circumstances, the trial court stated:
 "The Court has made a diligent search under the provisions of Section 13A-5-52, of the evidence offered by the defendant, and aspects of the presentence report favorable to the defendant on mitigation to *Page 840 
determine if there is any aspect of the defendant's character or record or any circumstances of the offense for which he has been convicted that would constitute a mitigating circumstance and finds that there is one mitigating circumstance as set out above, but finds no other, statutory or nonstatutory."
The trial court acknowledged that the appellant had presented witnesses to establish nonstatutory mitigating circumstances, and it named these witnesses. It is clear that the trial court considered the nonstatutory mitigating circumstances presented by the appellant but found that they did not exist.
 "A sentencer in a capital case may not refuse to consider or be 'precluded from considered' mitigating factors. Eddings v. Oklahoma, 455 U.S. 104, 110, 102 S.Ct. 869, 874, 71 L.Ed.2d 1 (1982) (quoting Lockett v. Code, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978)). The defendant in a capital case generally must be allowed to present any relevant mitigating evidence regarding the defendant's character or record and any of the circumstances of the offense, and consideration of that evidence is a constitutionally indispensable part of the process of inflicting the penalty of death. California v. Brown, 479 U.S. 538, 107 S.Ct. 837, 93 L.Ed.2d 934
(1987); Ex parte Henderson, 616 So.2d 348 (Ala. 1992); Haney v. State, 603 So.2d 368 (Ala.Cr.App. 1991), aff'd, 603 So.2d 412 (Ala. 1992), cert. denied, 507 U.S. 925, 113 S.Ct. 1297, 122 L.Ed.2d 687 (1993). Although the trial court is required to consider all mitigating circumstances, the decision of whether a particular mitigating circumstance is proven and the weight to be given it rests with the sentencer. Carroll v. State, 599 So.2d 1253 (Ala.Cr.App. 1992), aff'd, 627 So.2d 874 (1993), cert. denied, 510 U.S. 1171, 114 S.Ct. 1207, 127 L.Ed.2d 554 (1994). See also Harrell, 470 So.2d 1309 (Ala.), cert. denied, 474 U.S. 935, 106 S.Ct. 269, 88 L.Ed.2d 276 (1985). Moreover, the trial court is not required to specify in its sentencing order each item of proposed nonstatutory mitigating evidence offered that it considered and found not to be mitigating. Morrison v. State, 500 So.2d 36 (Ala.Cr.App. 1985), aff'd, 500 So.2d 57
(Ala. 1986), cert. denied, 481 U.S. 1007, 107 S.Ct. 1634, 95 L.Ed.2d 207 (1987)."
Williams v. State, 710 So.2d 1276 (Ala.Cr.App. 1996).
The appellant argues that the prosecutors obtained this conviction and sentence of death with inadmissible hearsay. The appellant cites testimony from a witness who stated that she heard the victim, while he was being abducted, pleading for his life stating, "Please don't kill me." The appellant further complains that this evidence was again used by the prosecutors in their closing argument. The record indicates that the appellant failed to object to this testimony and its subsequent use during closing argument; therefore, any error must rise to the level of plain error. Moreover, the appellant's failure to object weights against a finding of prejudice. Rule 45A, A.R.App.P., Kuenzel v. State, supra.
The record indicates that two witnesses testified that they heard the victim pleading for his life as he was being abducted. Another witness, one of the codefendants, testified that the victim pleaded for his life saying, "Please don't kill me. Just beat me." The codefendant testified that, just before the victim's mouth was taped shut at the ball field, he pleaded, "Please don't kill me."
These statements by the victim were admissible as spontaneous exclamations.
 " 'Generally, a person's statement concerning a startling occurrence made while he is perceiving the occurrence, or soon after his perception thereof, and while he is under the stress of a nervous excitement created by such perception, is admissible as tending to prove the truth of the matter asserted. A statement of this kind is frequently referred to as a spontaneous exclamation or excited utterance and is an exception to the hearsay evidence rule.
" '. . . .
 " 'The declaration must be instinctive rather than deliberate.'
 "C. Gamble, supra, at § 265.01(1). See also C. Torcia, [Wharton's Criminal Evidence,] at § 289 [(1th ed. 1986)]. *Page 841 
 "The question of whether the statement is spontaneous in a given case is to be decided upon the facts and circumstances of that case, and such determination is a question for the trial court. Jones v. State, 53 Ala. App. 690, 304 So.2d 34, cert. denied, 293 Ala. 761, 304 So.2d 38 (1974); C. Gamble, supra, at § 265.01(2)
 " 'The trial court, in determining whether the statement was made spontaneously, ought to consider: the degree of startlingness of the occurrence; how much time passed after the occurrence but before the statement was made; the effect of intervening events; the nearness of the place where the statement was made to the place of occurrence; the condition of the declarant; the content of the statement itself; and all other facts relating to whether the declarant was under the stress of a nervous excitement at the time he made the statement.'
"C. Gamble, supra, at § 265.01(2)."
O'Cain v. State, 586 So.2d 34, 38 (Ala.Cr.App. 1991).
In the present case, these pleas by the victim were made concurrently with the surprise and apprehension caused by his abduction. The subsequent pleas were made as quick preparations were being made for his killing, the stress of which led to his pleading for his life. Thus, these statements were not hearsay.
The appellant finally argues that the prosecutors improperly expressed their personal opinions concerning the sufficiency of the evidence and the appellant's guilt. The appellant cites the following statement by a prosecutor in closing argument: "I think after you've heard the evidence, after hearing this evidence, that it should be clear. I think that the State has proved to you beyond a reasonable doubt. . . ." The appellant further cites the portion in the record wherein the prosecutor read the indictment to the jury and stated that it was "[s]igned Robert Rumsey, District Attorney, 29th Judicial Circuit." Referring to specific pages in the record, the appellant also alleges that the prosecutor injected his personal opinion concerning the sufficiency of the evidence and the appellant's guilt on six other occasions. On three of these occasions these statements consisted of recapitulations of the evidence prefaced by the words "I think." On another occasion, the words "I think" were included in a statement where the prosecutor likened a piece of evidence to the top of a jug; the use of the words "I think" in stating that after the jury heard the evidence the prosecutor believed that the State had proved its case; and the words "I believe" in reference to the fact that the prosecutor believed that the facts of the case supported the aggravating circumstance that the crime was especially heinous, atrocious or cruel. When these comments are read in the context of the entire argument, it is clear that the statements were legitimate inferences and reasonable impressions from the evidence. George, ___ So.2d at ___;Rutledge v. State, 523 So.2d 1087, 1100 (Ala.Cr.App. 1987), rev'd on other grounds, 523 So.2d 1118 (Ala. 1988).
In Ex parte Rieber, 663 So.2d 999 (Ala. 1995), cert. denied,516 U.S. 995, 116 S.Ct. 531, 133 L.Ed.2d 437 (1995), the Alabama Supreme Court stated:
 "Furthermore, we view those comments that the prosecutor prefaced with 'I think,' 'I believe,' 'I feel,' 'I am satisfied,' and 'I have no doubt,' as expressing his reasonable impressions from the evidence. . . . We note, however, that even if these comments were to be viewed as expressions of the prosecutor's personal opinions and, thus, as 'crossing the line' as permissible argument, they, nonetheless, would not constitute reversible error."
To be reversible error, prosecutorial argument must pertain to the issues or it must be the type of comment that would influence the finding of the jury. Mitchell v. State,480 So.2d 1254, 1257-58 (Ala.Cr.App. 1985). "To justify reversal because of an attorney's argument to the jury, this court must conclude that reversible error has occurred." Twilley v. State,472 So.2d 1130, 1139 (Ala.Cr.App. 1985). None of these statements were improper.
Moreover, the district attorney's noting in reading the indictment to the jury, that it was signed by him, is not an injection *Page 842 
of his personal belief or otherwise improper. Similarly, inArthur v. State, 711 So.2d 1031 (Ala.Cr.App. 1996), the appellant argued that the prosecutor improperly inserted his credibility in an attempt to bolster the possibility of conviction by stating that the indictment had been signed by him in his capacity as district attorney. This Court stated:
 "Despite the appellant's argument to the contrary, there was no implication by the prosecutor in this case that he believed the appellant to be guilty and, therefore, was prosecuting the case. The jury was amply instructed that an indictment is not an indication of guilt but rather a vehicle for bringing an individual to trial and the prosecutor's acknowledgment that he signed the indictment in his capacity as district attorney was a statement of fact rather than an opinion or insertion of credibility."
Arthur, 711 So.2d at 1054. In the present case, the district attorney was merely reading the indictment to the jury, and his signature was recited as a portion of the indictment and a statement of fact.
 VII.
The appellant argues that the trial court improperly granted the State's challenges for cause of certain jurors. The record indicates that four jurors were excused as a result of the State's challenges for cause, all because they expressed fixed opinions against capital punishment. A review of the voir dire questioning of the jurors regarding their views of capital punishment indicates that three of these potential jurors stated that they would not be able to put aside their personal views and follow the law in a case involving the death penalty. The other potential juror stated, "I'm opposed to the death sentence." This potential juror then gave an equivocal response to a question by the prosecutor as to whether her opinions concerning capital punishment might impair her performance as a juror; thereafter, however, pursuant to follow-up questioning, the juror stated that her views concerning capital punishment would interfere with her ability to consider the death sentence.
To the average juror, who is unfamiliar with legal terms and concepts, voir dire questioning may be confusing and complicated.
 " '[T]he proper standard for determining when a prosecutive juror may be excluded for cause because of his . . . views on capital punishment is . . . whether the juror's views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." ' Wainwright v. Witt, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985) (quoting Adams v. Texas, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980)). It is not required that a prospective juror's bias in this regard be proved with 'unmistakable clarity.' Id. 469 U.S. at 424, 105 S.Ct. at 852.
 " '[M]any veniremen simply cannot be asked enough questions to reach the point where their bias has been made "unmistakably clear"; these veniremen may not know how they will react when faced with imposing the death sentence, or may be unable to articulate, or may wish to hide their true feelings. Despite this lack of clarity in the printed record, however, there will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law. [T]his is why deference must be paid to the trial judge who sees and hears the juror.' "Id. at 424-26, 105 S.Ct. at 852-53 (footnote omitted)."
Coral v. State, 628 So.2d 954, 969-70 (Ala.Cr.App. 1992).
In the present case, three of the four potential jurors stated that they definitely could not put their personal views aside and follow the law, and the fourth juror stated that she was opposed to the death penalty and clearly indicated that she would not be able to fairly perform her duties as a juror because of her feelings concerning capital punishment; these potential jurors were properly excused for cause.Wainwright v. Witt, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841
(1985).
 VIII.
The appellant argues that the trial court improperly excluded veniremembers *Page 843 
for reasons not listed in § 12-16-60, Code of Alabama 1975. Specifically, the appellant refers to individuals who requested to be excused because of their personal circumstances and hardships. The record indicates that not every juror who requested to be excused for personal reasons was not allowed to refrain from serving.
A review of the record and reasons given by the particular jurors who were excused,[1] indicates that the trial court did not abuse its discretion in excusing these particular jurors from service. Giles v. State, 632 So.2d 568, 574 (Ala.Cr.App. 1992), aff'd, 632 So.2d 577 (Ala. 1993), cert. denied, 512 U.S. 1213,114 S.Ct. 2694, 129 L.Ed.2d 825 (1994). Pursuant to §12-16-63(b), Code of Alabama 1975, a trial court is given discretion to excuse potential jurors under the following guidelines:
 "(b) A person who is not disqualified for jury service may be excused from jury service by the court only by a showing of undue hardship, extreme inconvenience or public necessity, for a period the court deems necessary, at the conclusion of which the person may be directed to reappear for jury service in accordance with the courts' direction."
The trial judge did not exceed his discretion in this case.
 IX.
The appellant argues that the trial court's reasonable doubt instruction was unconstitutional, in light of Cage v.Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). The record indicates that the appellant did not object to the trial court's instruction; therefore, any error must be analyzed pursuant to the plain error rule, Rule 45A, Ala.R.App.P.; moreover, the appellant's failure to object weighs against any finding of prejudice. The trial court's charge to the jury as to reasonable doubt was as follows:
 "What is a reasonable doubt? When I say the State is under the burden of proving guilt beyond a reasonable doubt and to a moral certainty, that does not mean that the State must prove an alleged crime beyond every imaginable or speculative doubt or beyond all possibility of mistake because that would be impossible.
 "A reasonable doubt means an actual doubt. It could arise out of the testimony in the case, or it could arise from the lack of testimony in the case. It is a doubt for which a reason can be assigned, and the expression to a moral certainty means practically the same thing as beyond a reasonable doubt because if you are convinced to a point where you no longer have a reasonable doubt, then you are convinced to a moral certainty."
This instruction was given to the jury by the trial court during its oral charge at the close of the guilt phase. During the sentencing phase, the trial court referred to its previous instruction, but did not further instruct the jury as to reasonable doubt.
The appellant appears to complain about the trial court's use of the phrase "moral certainty" and "a doubt for which a reason can be assigned" as improper.
In Williams v. State, supra, the appellant argued that " '[t]he use of the term "moral certainty" in defining reasonable doubt and the notions that a reasonable doubt is a doubt for which a reason can be articulated, or the types of definitions of reasonable doubt that were held to violate the Due Process Clause in Cage.' " 710 So.2d at 1334. In holding that the instruction in that particular case did not constitute plain error, this court noted that the standard announced in Cage, had been overruled, see Estelle v. McGuire, 502 U.S. 62,112 S.Ct. 475, 116 L.Ed.2d 385 (1991), but even if it had not been overruled, the error would not have constituted plain error, because the mere use of the term "moral certainty" did not make the charge unconstitutional under Cage. Rather, it was the combination of certain phrases, including "grave uncertainty," "actual substantial doubt," and "moral certainty" *Page 844 
that caused the problem in Cage. In deciding this issue, this Court stated:
 "In Cage, the United States Supreme Court held that the definition of reasonable doubt provided in the jury charge was such that 'a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause.' However, in Estelle v. McGuire, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), the Supreme Court expressly overruled the standard applied in Cage. Estelle
holds that when reviewing ambiguous jury instructions, an appellate court must determine ' "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution. Boyde v. California, 494 U.S. 370, 380, 110 S.Ct. 1190
[1198] 108 L.Ed.2d 316 (1990)." ' 502 U.S. at 72, 112 S.Ct. at 482. In a footnote, the Supreme Court explained:
 " 'In Boyde . . ., we made it a point to settle on a single standard of review for jury instructions — the "reasonable likelihood" standard — after considering the many different phrasings that had previously been used by this Court. 494 U.S. at 379-80 [110 S.Ct. at 1197-98] (considering and rejecting standards that required examination of either what a reasonable juror "could" have done or "would" have done). So that we may once again speak with one voice on this issue, we now disapprove the standard of review language in Cage and Yates [v. Evatt, 500 U.S. 391, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991)] and reaffirm the standard set out in Boyde.'
 "502 at 73 n. 4, 112 S.Ct. at 482 n. 4. This court has followed the standard set out in Boyde. See, e.g., Knotts v. State, 686 So.2d 431 (Ala.Cr.App. 1995). The appellant's claim must be examined against this standard.
 "Much of the appellant's argument concerns the use of the term 'moral certainty' in defining reasonable doubt. The Supreme Court in Victor v. Nebraska, 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994), observed that the use of that term in this context is disfavored because it may imply that jurors may base their verdict on factors other than facts that have been demonstrated by the evidence. However, the Court in Victor also stated, 'The Constitution does not dictate that any particular form of words be used in advising the jury of the government's burden of proof, so long as "taken as a whole, the instructions correctly conveyed the concept of reasonable doubt." Holland v. United States, 348 U.S. 121, 140 [75 S.Ct. 127, 138 99 L.Ed. 150 (1954)]' 511 U.S. at 22, 114 S.Ct. at 1251. The Court thereby reviewed the jury instruction under attack in the context of the entire charge and held that the inclusion of the 'moral certainty' phrase did not render the instruction unconstitutional. 511 U.S. at 22, 114 S.Ct. at 1251.'"
Williams v. State, 710 So.2d at 1335.
Therefore, examining the above-stated reasonable doubt charge in the context of the entire oral jury charge, there is no reasonable probability that the jury could have reached its verdict based on factors other than the evidence presented or that the jurors would have applied this instruction in an improper fashion.
Furthermore, as was the case in Williams, supra, this jury charge on reasonable doubt substantially complies with the pattern jury instruction for Alabama. In Ex parte Harrell,470 So.2d 1309 (Ala. 1985), the Alabama Supreme Court held that it was not plain error for the trial court to charge the jury pursuant to an approved pattern jury instruction. Thus, there is no error on this ground.
 X.
The appellant argues that the trial court erred in instructing the jury that it could infer his guilt based on his flight to avoid prosecution. However, the record indicates that there was sufficient evidence presented to submit to the jury the question whether the appellant fled the scene. One of the accomplices testified that the perpetrators immediately left the ball field, the scene of the offense, after the victim's body ceased burning. The accomplice testified that he *Page 845 
and the appellant then left Talladega County, where the ball park was located, and returned to Anniston, in Calhoun County. This fact could support an inference that the appellant was attempting to leave the jurisdiction in order to avoid connection with the crime. In Long v. State, 668 So.2d 56
(Ala.Cr.App. 1995), the appellant argued that the trial court improperly instructed the jury concerning evidence of flight, because he alleged that the only evidence of flight was that he was not at the scene of the offense when the police arrived. In finding that the trial court properly submitted the issue of flight submitted to the jury, this Court stated:
 "In Sartin v. State, 615 So.2d 135, 137
(Ala.Cr.App. 1992), this court stated:
 " ' "In a criminal prosecution the state may prove that the accused engaged in flight to avoid prosecution. This principle is based upon the theory that such is admissible as tending to show the accused's consciousness of guilt. The flight of the accused is admissible whether it occurred before or after his arrest.
 " ' "The state is generally given wide latitude or freedom in proving things that occurred during the accused's flight. This is especially true of those acts of the accused which tend to show that the flight was impelled by his consciousness of guilt.
 " ' "C. Gamble, McElroy's Alabama Evidence, § 190.01(1) (4th ed. 1991) (citations omitted). See also 2 Wigmore, Evidence § 276(4) (Chadbourn rev. 1979); Chandler v. State, 555 So.2d 1138
(Ala.Cr.App. 1989).
 "The record reveals that the appellant fled the scene of the incident and turned himself in to authorities the following morning. Thus, the trial court did not err in receiving evidence of the appellant's flight."
Long v. State, 668 So.2d at 60-61. See also Dailey v. State,604 So.2d 436 (Ala.Cr.App. 1992) (evidence that the robber fled the scene of the crime was sufficient to support the trial court's decision to instruct the jury on evidence of flight). " 'It is settled law that in criminal cases the flight or attempted flight of a defendant is a circumstance which the jury may take into consideration.' " Player v. State,568 So.2d 370, 373 (Ala.Cr.App. 1990).
Moreover, "since evidence of flight was shown at trial, the trial judge properly instructed the jury on this subject. SeeVaughn [v. State, 57 Ala. App. 134, 326 So.2d 662 (1976)];Frazier v. State, 57 Ala. App. 648, 331 So.2d 404 (1976);Childers v. State, 338 So.2d 1058 (Ala.Crim.App. 1976)." Wardv. State, 497 So.2d 571, 573 (Ala.Cr.App. 1986), reversed on other grounds, 497 So.2d 575 (Ala. 1986). In the present case, the trial court gave the following charge as to flight:
 "There's been some evidence in this case offered to show that after the alleged offense was committed that the defendant fled the scene of the alleged offense. Of course, it is always permissible for such evidence of flight to be offered, but it is for the jury to decide whether or not the defendant did flee from the scene of the alleged offense; and, if so, if such acts were from consciousness of guilt or for some other reason. If the jury finds that any such act by the defendant was from a consciousness of guilt, then this is a circumstance which may be weighed against such a defendant. But if the jury finds that any such act was from some other reason and not from a consciousness of guilt, then the fact that the defendant did such act or acts should not be weighed or taken as evidence against him."
Identical instructions have been held by this Court to be proper in Player v. State, 568 So.2d 370, 372-73 (Ala.Cr.App. 1990). The instructions in the present case did not suggest that the appellant had in fact fled or that he had done so from a consciousness of guilt. Cf. Ex parte Weaver, 678 So.2d 284
(Ala. 1996). There is no error on this ground.
 XI.
The appellant argues that the trial court failed to inform the jury that it could consider mercy and sympathy in determining whether the appellant should live or die. The appellant did not request such a charge and did not object to its omission at trial; *Page 846 
therefore, any error must rise to the level of plain error. Rule 45A, Ala.R.App.P. This failure to object must weigh against any finding of prejudice.
The record indicates that the trial court instructed the jury that its deliberations and verdict should be based only on the evidence presented and the law upon which the trial court instructed it. The trial court informed it that "[t]here is no room for the influence of passion, prejudice or other arbitrary factors." Such an instruction, charging the jurors to consider only evidence presented at trial in their sentencing deliberations and instructing them to disregard irrelevant matters to the issues has been upheld against constitutional challenges. California v. Brown, 479 U.S. 538, 543,107 S.Ct. 837, 840, 93 L.Ed.2d 934 (1987). A capital defendant is not automatically entitled to a mercy instruction.
Moreover, the appellant's argument, that the State improperly argued to the jury that it should avoid acting out of sympathy to the appellant in its deliberations, is without merit. Similarly, in Haney v. State, 603 So.2d 368, 394-95
(Ala.Cr.App. 1991), aff'd, 603 So.2d 412 (Ala. 1992), cert. denied, 507 U.S. 925, 113 S.Ct. 1297, 122 L.Ed.2d 687 (1993), the prosecutor argued to the jury that it should set aside its sympathies in making its decision. This Court held that those comments were proper, stating that they were "no more than the prosecutor urging the jury not to be distracted by matters unrelated to the evidence, but to confine itself to the facts and the law. . . . The prosecutor's remarks concerning sympathy, sympathy for children, and weaknesses are obvious efforts to prevent the jurors from considering emotional responses not based on the evidence, and they are permitted byBrown." Id. at 394.
In the present case, the appellant was allowed to present pleas for mercy from the witness stand at the sentencing hearing. The jury could consider the appellant's case, which included his family's and friends' pleas for him to receive a sentence of life imprisonment without parole.
There was no error in the trial court's failure to give an instruction concerning the consideration of mercy in the sentencing of the appellant, or by the prosecutor's argument to the jury that they should abstain from acting out of sympathy.
 XII.
The appellant argues that the jurys' general verdict recommending the death penalty failed to specify which, if any, statutory aggravating circumstances were found, and, that it was, therefore, improper. The appellant raises this claim for the first time on appeal; therefore, in order to constitute error it must rise to the level of plain error. Rule 45A, Ala.R.App.P. Moreover, his failure to object weighs against any finding of prejudice. However, this Court has previously held that there is no statutory or constitutional requirement that a jury makes specific findings as to aggravating circumstances during the sentencing phase of a capital murder case in Alabama. Haney v. State, 603 So.2d 368, 387-88 (Ala.Cr.App. 1991).
 XIII.
The appellant argues that the capital sentencing statute is unconstitutional because it does not state what weight the court should give the jury's recommendation as to sentencing in its consideration of a sentence. The record indicates that the appellant failed to raise this matter at the trial court level; thus, it must be analyzed pursuant to the plain error rule, Rule 45A, Ala.R.App.P. Moreover, his failure to object weighs against any finding of prejudice.
There is no constitutional violation by a statute requiring a trial court to consider a jury's recommended verdict and trusting the trial court to give it proper weight. Harris v.Alabama, 513 U.S. 504, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995). Thus, as this matter has been previously been determined adversely to the appellant, there is no plain error as to this matter.
 XIV.
The appellant argues that the State failed to corroborate his accomplice's testimony *Page 847 
at his trial, in violation of § 12-21-222, Code of Alabama
1975.
In determining whether evidence is sufficient to corroborate the testimony of an accomplice, the evidence must tend to connect the appellant with the offense, but need not directly do so. Moreover, it need not apply toward the proof of any particular fact contained in the testimony of the accomplice. The process for determining whether the accomplice's testimony was sufficiently corroborated is a subtraction process, whereby the accomplice's testimony must first be eliminated and then the remaining evidence examined to determined if it sufficiently connects the appellant with the offense.Carden v. State, 612 So.2d 509, 513 (Ala.Cr.App. 1992); Exparte Bell, 475 So.2d 609 (Ala.), cert. denied, 474 U.S. 1038,106 S.Ct. 607, 88 L.Ed.2d 585 (1985).
In the present case, the testimony of the accomplice, Quintay Cox, was corroborated by the following evidence: his testimony that they were driving a blue van when they committed the offense was corroborated by a witness's testimony that one of the perpetrators rented a van that weekend; the accomplice's testimony that they stopped at the "Happy Tree" and thereafter kidnapped the victim at gunpoint was corroborated by the testimony of State's witness, Sharon Ackles; another witness also testified that he had observed all four perpetrators in the van on that occasion; the accomplice's testimony that the victim pleaded for his life stating, "Please don't kill me," before being pulled into the van was corroborated by the testimony of two witnesses, one stating that the victim begged, "I ain't getting in cause y'all going to kill me" and the other testifying that the victim stated, "Please don't kill me"; and the accomplice's testimony that one of the perpetrators purchased gasoline, placing it in a black plastic container with a red top, was corroborated by the discovery of a black plastic antifreeze bottle found by the victim's body and placed in the body bag with the victim, as well as the discovery of a red plastic bottle top which was found to contain traces of gasoline. Moreover, the accomplice's testimony that duct tape was used to attach the victim's body to a board, to bind arms, and to close his mouth was corroborated by the testimony of the coroner who found traces of tape on the victim's right forearm and across his mouth. Traces of duct tape were also found on the burned board located at the scene of the offense. Furthermore, the accomplice's brother testified that one of the perpetrators had told him that they had apprehended the victim and had taken him to the ball field where he had been shot and set on fire. Other witnesses also testified to the fact that they had heard three of the perpetrators, before the offense, threaten to hurt the victim because he owed them money for narcotics.
This evidence was ample to connect the appellant to the offense and to corroborate the accomplice's testimony. Corroborative evidence need not be sufficient to support a conviction but must legitimately tend to connect the accused with the offense. Andrews v. State, 370 So.2d 320, 322
(Ala.Cr.App.), cert. denied, 370 So.2d 323 (Ala. 1979). There was no error on this ground.
 XV.
The appellant argues that the trial court should have ordered a change of venue for the appellant's trial. The record indicates that the appellant failed to make a motion for change of venue at trial, or to raise this matter in any manner. Therefore, any error must be analyzed pursuant to the plain error rule, Rule 45A, Ala.R.App.P.; moreover, his failure to present the claim to the trial court weighs against any finding of prejudice.
There is no indication in the record of any prejudicial publicity concerning this offense. During the voir dire examination of potential jurors, the members of each panel were asked whether they had read or heard anything concerning this event. The potential jurors who indicated that they did have some prior knowledge were individually questioned, and only one indicated that she could not put what she had read out of her mind. She was excused. The remaining jurors all stated that they could decide the case on the evidence at trial and, in fact, admitted to having little knowledge of the *Page 848 
circumstances of the offense. See Williams, 710 So.2d at 1312.
 " ' [A] change of venue must be granted only when it can be shown that the pretrial publicity has so "pervasively saturated" the community as to make "the court proceedings nothing more than a 'hollow formality' " . . . or when actual prejudice can be demonstrated. The burden of showing this saturation of the community or actual prejudice lies with the appellant.' "
George v. State, ___ So.2d at ___, quoting Oryang v. State,642 So.2d 979, 983 (Ala.Cr.App. 1994).
In the present case, because there was no motion by the appellant and thus no hearing on the matter, there is no indication in the record of any media coverage of the events or the trial, other than a few newspaper articles contained in the record concerning the offense. The appellant has failed to show any actual prejudice resulting from the pretrial publicity as a result of the perspective jurors' responses during voir dire examination. Oryang v. State, 642 So.2d 989, 993 (Ala.Cr.App. 1994).
 "The defendant is not entitled to jurors who are totally ignorant of the facts and issues involved in the case or to jurors who never entertained a preconceived notion as to the defendant's guilt of innocence. Ex parte Grayson, 479 So.2d 76, 80
(Ala.), cert. denied, 474 U.S. 865, 106 S.Ct. 189, 88 L.Ed.2d 157 (1985). A defendant is entitled to a trial by jurors who can lay aside any preconceived impressions or opinions and render a verdict based on the evidence which is presented at trial, id.
The record in this case indicates that the appellant received such a trial. See also Murphy v. Florida, 421 U.S. 794, 799-800, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589 (1975); Irvin v. Dowd, 366 U.S. 717, 723, 81 S.Ct. 1639, 1643, 6 L.Ed.2d 751
(1961). Because the appellant has failed to show that the pretrial publicity in this case was 'inherently prejudicial,' Holladay v. State
[549 So.2d 122 (1988)] supra, or 'presumptively prejudicial,' Kuenzel v. State, 577 So.2d 474
(Ala.Cr.App. 1990), affirmed, 577 So.2d 531 (Ala. 1991), and the appellant has also failed to show that there was actual juror prejudice, we find no abuse of discretion by the trial court or manifest error in his finding of impartiality and his denial of the appellant's motion for change of venue. Irvin v. Dowd, 366 U.S. at 724, 81 S.Ct. at 1643; Ex parte Grayson, 479 So.2d at 80."
Oryang v. State, 642 So.2d at 993-94.
 XVI.
The appellant argues that the trial court should have conducted fully sequestered individual voir dire because of alleged excessive and pervasive pretrial publicity. The record indicates that the appellant did file a pretrial motion requesting that voir dire be sequestered and handled individually. However, the examination was conducted by the venire's being divided into three panels for separate examination. Following the examination of the panels, there was some individual questioning of jurors who gave certain responses, including whether they had seen or heard any pretrial publicity. Similarly, in George v. State, supra, the appellant was allowed to question individually any potential juror who had expressed knowledge of the ease. In that case, this Court held that the voir dire examination, which had also been conducted in panel form, was proper, stating:
 " 'Even in capital cases, there is no requirement that a defendant be allowed to question each perspective juror individually during voir dire examination.' Hallford v. State, 548 So.2d 526, 538
(Ala.Cr.App.), aff'd, 548 So.2d 547 (Ala.), cert. denied, 493 U.S. 945, 110 S.Ct. 354, 107 L.Ed.2d 342 (1989). See also Taylor v. State, 666 So.2d 36
(Ala.Cr.App. 1994), aff'd, on remand, 666 So.2d 71
(Ala.Cr.App. 1994), aff'd, 666 So.2d 73 (Ala. 1995).
 "Moreover, in Haney, supra, a capital murder case, this Court held that questioning a venire in panels met the requirements of this process and also provided that any prejudice on the part of the jurors would be expressed. The trial court committed no error by not conducting individual voir dire."
George v. State, ___ So.2d at. ___.
"A trial court is vested with great discretion in determining how voir dire examination will be conducted, and that court's *Page 849 
decision on how extensive a voir dire examination is required will not be overturned except for an abuse of that discretion.Fletcher v. State, 291 Ala. 67, 277 So.2d 882 (1973); Lane v.State, 644 So.2d 1318 (Ala.Cr.App. 1994); Harris v. State,632 So.2d 503 (Ala.Cr.App. 1992), affirmed, 632 So.2d 543 (Ala. 1993), affirmed, 513 U.S. 504, 115 S.Ct. 1031,130 L.Ed.2d 1004 (1995)." Ex parte Land, 678 So.2d 224 (Ala. 1996), cert. denied, ___ U.S. ___, 117 S.Ct. 308, 136 L.Ed.2d 224 (1996).
 "As the general rule, the decision whether to voir dire perspective jurors individually or collectively is in the sound discretion of the trial court. Waldrop v. State, 462 So.2d 1021
(Ala.Cr.App. 1984), cert. denied, 472 U.S. 1019, 105 S.Ct. 3483, 87 L.Ed.2d 618 (1985). This discretion is limited, however, by the requirements of due process. United States v. Hawkins, 658 F.2d 279 (5th Cir. 1981); Waldrop v. State. Individual questioning may be necessary under some circumstances to ensure that all prejudice has been exposed. United States v. Hurley, 746 F.2d 725
(11th Cir. 1984)."
Haney v. State, 603 So.2d 368, 402 (Ala.Cr.App. 1991), affirmed, 603 So.2d 412 (Ala. 1992), cert. denied,507 U.S. 925, 113 S.Ct. 1297, 122 L.Ed.2d 687 (1993).
A complete review of the record concerning the voir dire questioning indicates that the method of the examination and the empaneling of the jury "provided reasonable assurance that prejudice would have been discovered if present." Haney v.State, supra at 402.
 XVII.
The appellant argues that the evidence presented at trial was insufficient to support a capital murder conviction; he specifically cites only an absence of physical evidence connecting him to the crime. However, the record indicates that the State presented sufficient evidence to prove the appellant guilty beyond a reasonable doubt of the intentional murder of the victim by burning him during a kidnapping. The State presented ample evidence of an intentional killing by burning through the coroner's testimony, the accomplice's testimony, and physical evidence such as the charred board, the trace evidence of gasoline, the container in which the gasoline had been transported, and the trace evidence of the duct tape. There was further evidence that the appellant had been alive when he was set on fire, as soot was found in his windpipe and lungs. The accomplice's testimony also indicated that the appellant fully and willingly participated in the offense.
The kidnapping of the victim was also proved by sufficient evidence. There was testimony that the victim was forced into a van, while pleading for his life, and taken to the scene of the offense, where he was bound to a board with duct tape. The elements of kidnapping in the first degree are to abduct with the intent to inflict physical injury or to terrorize. Pursuant to § 13A-6-40(2), Code of Alabama 1975, a person is abducted when he is restrained with the intent to prevent his liberation by the use or threat of use of deadly physical force. A person is restrained when his movements are nonconsensually and unlawfully intentionally restricted by moving him to another place or confining him; furthermore, the restraint must be accomplished by physical force, intimidation or deception. §13A-6-40(1), Code of Alabama 1975.
The State presented sufficient evidence to prove that the victim was intentionally killed by burning during his abduction with the intent to inflict physical injury on him or to terrorize him.
 XVIII.
The appellant argues that the "double-counting" of kidnapping as an element of the capital offense and as an aggravating circumstance was improper. However, the use of an element of an underlying crime as an aggravating circumstance has been held to be constitutionally and statutorily permissible.
 "The practice of permitting the use of an element of the underlying crime as an aggravating circumstance is referred to as 'double-counting' or 'overlap' and is constitutionally permissible. Lowenfield v. Phelps, 484 U.S. 231, 108 S.Ct. 546, *Page 850 98 L.Ed.2d 568 (1988); Ritter v. Thigpen, 828 F.2d 662
(11th Cir. 1987); Ex parte Ford, 515 So.2d 48 (Ala. 1987); cert. denied, 484 U.S. 1079, 108 S.Ct. 1061, 98 L.Ed.2d 1023 (1988); Kuenzel v. State, 577 So.2d 474 (Ala.Cr.App. 1990); aff'd, 577 So.2d 531
(Ala.), cert. denied, 502 U.S. 886, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991).
 "Moreover, our statutes allow 'double-counting' or 'overlap' and provide that the jury, by its verdict of guilty of the capital offense, finds the aggravating circumstances encompassed in the indictment to exist beyond a reasonable doubt. See §§ 13A-5-45(e) and -50. 'The fact that a particular capital offense as defined in section 13A-5-40(a) necessarily includes one or more aggravating circumstances as specified in section 13A-5-49
shall not be construed to preclude the finding and consideration of that relevant circumstance or circumstances in determining sentence.' § 13A-5-50."
Coral v. State, 628 So.2d 954, 965-66 (Ala.Cr.App. 1992). See also Hutcherson v. State, 677 So.2d 1174 (Ala.Cr.App. 1994), reversed on other grounds, 677 So.2d 1205 (Ala. 1996); Windsorv. State, 683 So.2d 1027 (Ala.Cr.App. 1994), affirmed,683 So.2d 1042 (Ala. 1996); Weaver v. State, 678 So.2d 260
(Ala.Cr.App. 1995), reversed on other grounds, 678 So.2d 284
(Ala. 1996).
 "Section 13A-5-50, Code of Alabama 1975, states, in part, as follows:
 " 'The fact that a particular capital offense as defined in section 13A-5-40(a) necessarily includes one or more aggravating circumstances as specified in section 13A-5-49 shall not be construed to preclude the finding and consideration of that relevant circumstance or circumstances in determining sentence.'
 "Clearly, § 13A-5-50 provides that a jury may consider an element of capital murder as an aggravating circumstance if that element is listed in § 13A-5-49. Further, this court has repeatedly held that the use of an element of capital murder in such a way does not, as the appellant argues, punish a defendant twice for the same offense. Kuenzel, supra; see also Ex parte Kennedy, 472 So.2d 1106 (Ala.), cert. denied, 474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985).
 " 'A capital punishment scheme, under which the same felony may form the basis of an essential element of the crime and an aggravating circumstance for consideration by the jury in recommending a sentence, does not constitute a denial of the guarantee against double jeopardy.'
 "Kuenzel, 577 So.2d at 488, quoting Fortenberry v. State, 545 So.2d 129, 142 (Ala.Cr.App. 1988), aff'd, 545 So.2d 145 (Ala. 1989), cert. denied, 495 U.S. 911, 110 S.Ct. 1937, 109 L.Ed.2d 300 (1990)."
Burton v. State, 651 So.2d 641, 657-58 (Ala.Cr.App. 1993), aff'd, 651 So.2d 659 (Ala. 1994), cert. denied, 514 U.S. 1115,115 S.Ct. 1973, 131 L.Ed.2d 862 (1995).
 XIX.
The appellant argues that the jury's sense of responsibility was diminished when the trial court and prosecutors told the jury that its sentence would be only a "recommendation." The record indicates that the appellant failed to raise this issue at the trial court level; therefore, any error must be analyzed pursuant to the plain error rule, Rule 45A, Ala.R.App.P.; moreover, this failure to object weighs against any finding of prejudice.
A review of the record indicates that these comments referring to the punishment stage verdict by the jury as a "recommendation" were not intended to, and did not, serve to diminish the jury's sense of responsibility in arriving at its advisory verdict. In Alabama, although a jury must conscientiously and responsibly weigh and evaluate the evidence concerning sentencing and arrive at its recommendation, the trial court, rather than the jury, ultimately determines the sentence. "We have previously held that the trial court does not diminish the jury's role or commit error when it states during the jury charge in the penalty phase in a death case that the jury's verdict is a recommendation or an 'advisory verdict.' White v. State, 587 So.2d 1218 (Ala.Cr.App. 1990), aff'd, 587 So.2d 1236 (Ala. 1991), cert. denied, 502 U.S. 1076,112 S.Ct. 979, 117 L.Ed.2d 142 (1992)." Burton *Page 851 v. State, 651 So.2d at 657. Moreover, there was no error in the prosecutor's statements when construed in the context of the entire charge. See Taylor v. State, 666 So.2d 36, 51
(Ala.Cr.App. 1994).
In the present case, there was no reasonable possibility that the jury was "misled, misinformed, or confused as to its critical role in sentencing under Alabama law" as a result of these statements. Taylor v. State, 666 So.2d at 51.
 XX.
The appellant argues that the Alabama statute limiting the fees of court-appointed attorneys to $1000 for out-of-court work in each phase of a capital case violates state and constitutional law. Thus, the appellant argues that §15-12-21(d), Code of Alabama 1975, is unconstitutional. However, this Court has previously rejected similar claims and adheres to its prior decisions on this matter. Smith v. State581 So.2d 497, 526-29 (Ala.Cr.App. 1990), rev'd on other grounds, 581 So.2d 531 (Ala. 1991); May v. State,672 So.2d 1310, 1311 (Ala. 1995).
 XXI.
The appellant argues that the manner of execution used by the state of Alabama constitutes cruel and unusual punishment. However, it has previously been held on numerous occasions that death by electrocution does not constitute cruel and unusual punishment. Sullivan v. Dugger, 721 F.2d 719 (11th Cir. 1983);Lindsey v. Smith, 820 F.2d 1137, 1155 (11th Cir. 1987), cert. denied, 489 U.S. 1059, 109 S.Ct. 1327, 103 L.Ed.2d 595 (1989);Lowenfield v. Phelps, 817 F.2d 285 (5th Cir. 1987), aff'd,484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). Moreover, this Court has determined this issue adversely to the appellant. See, e.g., Stephens v. State, 580 So.2d 11, 26 (Ala.Cr.App. 1990), aff'd, 580 So.2d 26 (Ala. 1991), cert. denied,502 U.S. 859, 112 S.Ct. 176, 116 L.Ed.2d 138 (1991).
 "The United States Supreme Court addressed the death by electrocution issue in In re Kemmler, 136 U.S. 436, 10 S.Ct. 930, 34 L.Ed. 519 (1890). In determining what constitutes cruel and unusual punishments the Court stated: 'Punishments are cruel when they involve torture or lingering death; that the punishment of death is not cruel within the meaning of that word as used in the constitution. It implies that there is something inhuman or barbarious, — something more than the mere extinguishment of life.' Id. at 447, 10 S.Ct. at 933. In holding that such a punishment is not cruel or unusual, the Court reasoned 'that this act was passed in the effort to devise a more humane method of reaching the result.' Id. Accord Spinkellink v. Wainwright, 578 F.2d 582, 616 (5th. Cir. 1978). Appellant's contention is therefore without merit; death by electrocution does not amount to cruel and unusual punishment per se, but is a constitutional means of imposing a sentence of death."
Jackson v. State, 516 So.2d 726, 737 (Ala.Cr.App. 1985), remanded on other grounds, 516 So.2d 768 (Ala. 1986).
 XXII.
The appellant argues that the cumulative effect of all of the above-listed claims of error was prejudicial and entitles the appellant to a new trial and sentencing hearing under State and federal law. However, the claimed errors to which the appellant refers have now been determined to be without merit. "[B]ecause no single instance of alleged improper conduct constituted reversible error, this Court will not consider the cumulative effect to be greater error. McNeely v. State, 524 So.2d 375
(Ala.Cr.App. 1986); Johnson v. State, 541 So.2d 1112
(Ala.Cr.App. 1989)." Crymes v. State, 630 So.2d 120, 123-24
(Ala.Cr.App. 1993), aff'd, 630 So.2d 125 (Ala. 1993). See alsoWilliams v. State, 710 So.2d at 1276. The appellant is not entitled to relief as to this claim.
 XXIII.
As required by § 13A-5-53, Code of Alabama 1975, we address the propriety of the appellant's conviction and sentence of death. The appellant was indicted and convicted of capital murder, see § 13A-5-40(a)(1), Code of Alabama 1975, for intentionally causing the death of Gregory Huguley by burning him during a kidnapping in the first degree. *Page 852 
The record reflects that the appellant's sentence was not imposed under the influence of passion, prejudice, or any other arbitrary factor. See § 13A-5-53(b)(1), Code of Alabama 1975.
A review of the record shows that the trial court correctly found the existence of two aggravating circumstances: that the capital offense was committed during a kidnapping, and that the capital offense was especially heinous, atrocious, and cruel when compared to other capital cases. In light of the circumstances under which the victim was apprehended, abducted, bound, doused with gasoline, and burned to death, this offense was especially heinous, atrocious, and cruel, in that it was unnecessarily torturous, pitiless, conscienceless, extremely wicked, and shockingly evil. The trial court correctly found the existence of one statutory mitigating circumstance: that the defendant had no significant history of prior criminal activity. It considered, but failed to find, the existence of any nonstatutory mitigating circumstance. The trial court weighed the mitigating and aggravating circumstances and properly determined that the aggravating circumstances outweighed the statutory mitigating circumstance. We agree with the trial courts' findings.
As required by § 13A-5-53(b)(2), Code of Alabama 1975, this Court must independently weigh the aggravating and mitigating circumstances to determine the propriety of the appellant's death sentence. After an independent weighing, this Court is convinced that the appellant's sentence of death is the appropriate sentence.
As § 13A-5-53(b)(3), Code of Alabama 1975, provides, we must also address whether the appellant's sentence was disproportionate or excessive when compared to sentences imposed in similar cases. The appellant's sentence was neither. See Heath v. State, 455 So.2d 898 (Ala.Cr.App. 1983); aff'd,455 So.2d 905 (Ala. 1984), aff'd, 474 U.S. 82, 106 S.Ct. 433,88 L.Ed.2d 387 (1985); Boyd v. State, 542 So.2d 1247
(Ala.Cr.App. 1988), aff'd, 542 So.2d 1276 (Ala.), cert. denied,493 U.S. 883, 110 S.Ct. 219, 107 L.Ed.2d 172 (1989); Callahanv. State, 557 So.2d 1292 (Ala.Cr.App. 1989), aff'd,557 So.2d 1311 (Ala.), cert. denied, 498 U.S. 881, 111 S.Ct. 216,112 L.Ed.2d 176 (1990); Neelley v. State, 494 So.2d 669
(Ala.Cr.App. 1985), aff'd, 494 So.2d 697 (Ala. 1986), cert. denied, 480 U.S. 926, 107 S.Ct. 1389, 94 L.Ed.2d 702 (1987);Payne v. State, 683 So.2d 440 (Ala.Cr.App. 1995), aff'd,683 So.2d 458 (Ala. 1996). Moreover, despite the fact that two of the accomplices apparently received lesser sentences, the appellant's sentence is not improper as disproportionate. See Part VI of this opinion.
We have searched the entire record for any error that might have adversely affected the appellant's substantial rights and have found none. Rule 45A, Ala.R.App.P.
The appellant received a fair trial. Therefore, the judgment of the circuit court is due to be, and it is hereby, affirmed.
AFFIRMED.
All judges concur.
[1] The following reasons were given by the five prospective jurors who were excused by the trial court: one taught her children at home; one had business conflicts; one had final examinations the week of trial; one had a wife who was scheduled for surgery the week of trial; and one had a "one time appointment for the police force in Birmingham" during that week.